15972

LeGETTE *v.* CAROLINA BUTANE GAS CO., INC., *ET AL.*

(48 S. E. (2d) 472)

*Messrs. Woods & Woods,* of Marion, and *Wright & Burroughs,* of Conway, for Appellant, cite:

*Messrs. James B. Dixon,* of Marion, and *J. Reuben Long,* of Conway, for Respondent, cite:

July 18, 1947.

BAKER, C. J.: This is an appeal from a judgment for $1,-000.00 actual damages in favor of the respondent, against the appellant, Carolina Butane Gas Company, Inc., recovered in an action by him against said appellant, and one 1941 Ford truck, bearing Serial Number and License Number as set forth in the caption hereof, on account of personal injuries alleged to have been sustained by the respondent when the defendant truck, owned by the appellant and operated by its agent, servant or employee, while traveling in the same direction as was a Ford pick-up truck being operated by the respondent on Highway Number 501 leading from Marion to Conway, in passing the Ford pick-up truck, at a point approximately one mile south of the limits of the Town of Marion, is alleged to have been so negligently, carelessly, willfully, wantonly, recklessly and unlawfully operated that it collided with the last mentioned truck.

Two other cases arising out of the same accident were consolidated with the present action and tried together in the court below. In one of those cases Alfred Burch, a passenger in the Ford pick-up truck, recovered a verdict of $2,000.00 for personal injuries; and C. W. Bell recovered a verdict of $200.00 for property damage to the Ford pick-up truck. By agreement the present appeal is determinative of all three cases.

Paragraphs three and four of the respondent's Complaint allege:

"3. That on or about February 10, 1945, at 3:00 P. M., plaintiff was driving a pick-up truck in a careful and lawful manner, on the right hand side of Highway Number 501 leading from Marion to Conway, traveling towards Conway, about one mile south of the Town of Marion, on the curve just before reaching Smith Swamp, when defendant truck owned by the defendant gas company, and operated by the defendant gas company's agent, servant or employee at a fast and dangerous rate of speed, greater than the speed allowed under the laws of the State of South Carolina,

in a willful, wanton, careless, reckless, negligent and unlawful manner, passed the truck which plaintiff was driving and struck said truck causing it to turn over and pin plaintiff under said truck, thereby severely wounding plaintiff * * *; that the said truck operated by defendant's servant, agent, or employee failed to stop and render assistance as required by law, but continued on towards Conway, South Carolina.

"4. That the defendant truck was operated by the defendant gas company's agent, servant or employee in a willful, wanton, negligent, reckless and unlawful manner as follows:

"(b) In running into the truck which plaintiff was driving on the right hand side of the road without allowing a proper clearance for said truck.

"(d) In operating the said defendant truck at a speed that was too fast and dangerous under the circumstances and greater than that allowed under the laws of the State of South Carolina.

"(e) In failing to stop and render assistance as required by the laws of the State of South Carolina."

The answer of the appellant to the foregoing allegations of the complaint was a general denial.

By virtue of the authority contained in Section 8792 of the Code of 1942, the alleged offending truck was made a party defendant, and attached. Of course, insofar as the action against the truck was concerned, it was an action *in rem,* and was merely an additional remedy afforded the respondent for the collection of such judgment as he might recover against the appellant.

At the conclusion of all testimony the appellant made a motion for a direction of verdict in its behalf, which motion was refused. Following the rendition of the verdict, as aforesaid, the appellant moved for judgment in its behalf *non obstante veredicto,* which motion was likewise refused.

Appellant's statement of the "Questions Involved" follows:

"1. Under the pleadings and the testimony, was there not such a failure of proof of the plaintiff's case as to require the Trial Court to direct a verdict in favor of the defendants?

"2. The plaintiff having brought a suit against a particular vehicle and its alleged owner, charging the vehicle with being the instrumentality which inflicted the damage, was it not error for the Trial Court to charge that recovery could be had against the owner alone?

"3. Was there any evidence before the court to afford a basis for a verdict against the appellant other than through the agency of its co-defendant?

"4. When the verdict of the jury exonerated the vehicle charged with the delict alleged in the complaint, can recovery be had against the owner of the vehicle sued jointly with it?"

The testimony on behalf of the respondent was to the effect that on the date and at approximately the time of day alleged in the complaint, the respondent was driving a pick-up truck in a careful and lawful manner on Highway Number 501, which is the main highway from Marion to Conway; that at a point on said highway about one mile south of the Town of Marion a truck of the appellant, or that is, a truck with the words "Butane Gas" printed in large letters on the side of the truck or tank attached to the truck, traveling in the same direction as was the pick-up truck being driven by respondent, in passing same, cut too quickly back to the right of the center of the highway, thus causing the rear of the passing truck to collide with the front of the pick-up truck, resulting in the light pick-up truck careening across the highway, and turning over on the respondent. There was additional identification of the passing truck as that of a Butane Gas truck, and such a truck was seen traveling this highway towards Conway within a short space of time after the accident, about one and one-half miles

farther towards Conway. It was the theory of respondent that the end of the rear bumper on the appellant's truck caught the front left wheel of the pick-up truck as it cut back in front of it.

A deputy sheriff of Marion County in his investigation of the accident went to the home of a Mr. Richardson below Conway, who was in the employ of the appellant as one of its truck drivers, talked to Mr. Richardson and examined a Butane gas delivery truck, the property of the appellant, which was in the possession of Richardson. This officer in testifying for the respondent stated: "* * * So this rear bumper here that I was trying to explain to you, had a fresh dent, it was pulled down at the corner in this direction on the right hand side, it looked like the rust and mud was just pulled off of it". On cross-examination and in direct reply to questions this witness testified that he knew nothing of the details of the accident; that Mr. Richardson, the appellant's truck driver, never did admit or deny that the truck he was driving struck the pick-up truck, but said that he could have hit it, that his truck was loaded and the motor running and his glasses were closed up; that if he hit it he never did know anything about it.

When Mr. Richardson testified in behalf of the appellant, he made practically the same statement, as will be seen from the following questions and answers:

"Q. You had a powerful truck, there was a lot of force in that truck? A. There was a good bit.

"Q. Why did you tell them that you might have done it and didn't know about it? A. Well, I didn't know whether I done it or not.

"Q. You mean the truck was so powerful? Did you explain to the officers how you could have done it and not known about it? A. I told them that if I did it I didn't know anything about it.

"Q. How did you tell them that you could have done it and not known anything about it? A. I had gas on the truck, a little over 100 gallons—

"Q. You had your windows up? A. Yes, sir.

"Q. Rolled to the top? A. Yes, sir.

"Q. The truck was making a lot of noise? A. A good bit.

"Q. And a big truck like this could have caught that bumper on that tire and turned them over? A. That's right.

"Q. And you don't say you didn't do it? A. I say if I done it, I don't know anything about it."

It is admitted by the appellant that one of its trucks which it then operated in delivering Butane gas was being operated on the highway heretofore mentioned, and along that section thereof where the accident occurred, at some time between 3:00 and 3:30 o'clock on the day of the accident; and that Marion County was in the appellant's territory for the sale and delivery of Butane gas. One of the respondent's witnesses, an eye witness to the accident, had testified that the Butane gas truck which collided with the truck being driven by respondent, had two tanks on it. The truck of the appellant which Mr. Richardson said he was driving on that day on said highway had only one tank, and it was, we infer, a one tank car which was attached. Another truck owned and operated by the appellant did have two tanks on it, but was not in the vicinity of Marion on the day of the accident, according to the testimony in behalf of the appellant. There was also testimony offered by the appellant tending to prove that the truck driven by its employee, Mr. Richardson, had long since passed the point of the accident prior to the happening thereof.

If a truck certain of the appellant had not been made a party-defendant to the action, it would not, of course, be seriously contended that the trial Judge, under the testimony adduced, committed error of law in refusing the appellant's motion for a direction of verdict in its behalf.

The appellant has confused the designation of a truck certain (its property), with the naming of an agent certain whose sole negligence is alleged to have resulted in injuries to a claimant. This is borne out by the statement in appel-

lant's printed brief that "Nowhere in the complaint of plaintiff is there an allegation charging the corporate defendant with any negligence not directly linked with that of the defendant truck. The whole theory of the case is that the particular truck described in the caption was the one which inflicted the damage".

It appears to us that the theory of the respondent's case is that he was injured through the negligence and carelessness of an agent of the appellant in the operation of a truck owned by the appellant and on its business at the time. If the respondent had also named and joined the agent and employee of the appellant who was operating the truck, as a defendant, and if the jury had exonerated the driver, that is, failed to render a verdict against him, then the verdict against the appellant would not have been sustainable under the cases of *Durst et al., v. Southern Railway Co., et al.,* 130 S. C. 165, 125 S. E. 651, and *Carter v. Atlantic Coast Line Railroad Co.,* 194 S. C. 494, 10 S. E. (2d) 17, and numerous other decisions of this Court.

Here the appellant is seeking to have recourse to the established law that where the sole negligence is alleged to have been that of a named agent, and such agent is made a party-defendant to an action, and is exonerated by the verdict of a jury, then a verdict against the principal cannot stand.

The North Carolina case of *Whichard v. Lipe et al.,* 221 N. C. 53, 19 S. E. (2d) 14, 139 A. L. R. 114, cited and strongly relied upon by the appellant does not deal with the issue here presented. There, the plaintiff elected to allege that one, L. C. Tilley, the agent of Lipe Motor Lines, and who was made a co-defendant with Lipe Motor Lines, but not served with summons, was operating the truck of Lipe Motor Lines when it is alleged to have negligently collided with a truck occupied by the plaintiff's intestate, resulting in his death. There was no testimony tending to support the allegation that Tilley was operating the defend-

ant's truck. The trial Judge refused a motion for judgment as of nonsuit, which ruling was reversed by the Supreme Court.

It will be noted that there, unlike in the instant case, the sole negligence complained of and alleged to have resulted in the death of the plaintiff's intestate, was that of an agent and servant certain of the truck owner.

In the instant case, there was no testimony that any truck, the property of the appellant, was on the day of the accident, being operated by any one not its agent or employee. To the contrary there was ample testimony from which a reasonable inference could be drawn that a truck belonging to the appellant, and operated by one of its agents and employees in the course of its business was negligently and carelessly operated, resulting in the injuries to the respondent.

Appellant's fifth request to charge was as follows: " 'I charge you further that the plaintiffs must prove that the truck which caused the accident was the 1941 Ford truck described in the complaint. No other truck will do. The plaintiffs must prove that that particular truck was the one, otherwise, they cannot recover.' " The trial Judge in charging this request limited such statement of law to a verdict as against the truck, and it is to such limitation on the one hand, and amplification on the other hand, that the appellant alleges error. It was charged in connection therewith: "Now, I add to that, otherwise they cannot recover against the truck named as the defendant. In order to get a verdict against the truck named as the defendant, this particular truck, which the plaintiff charges was the truck of the gas company which caused this injury by its negligent operation, before they would be entitled to a verdict against that truck, they must prove to your satisfaction by the greater amount of the truth that this particular truck named here was, in fact, the truck which through its negligent operation caused injuries to the plaintiffs. If you are not satisfied

as to what truck it was or not satisfied that any truck of the gas company caused this injury, you would have no right to find any verdict against this particular truck named as defendant; however, you would have a right, if satisfied by the greater amount of the evidence, that a gas company agent operated a gas company's truck, no matter which truck of the gas company it might have been, if you be satisfied that a gas truck of the gas company was operated by the gas company's agent in a negligent manner and if you be satisfied by the greater weight of the evidence that said truck being operated in a negligent manner caused the injury complained of to one or more of these plaintiffs and that such negligence in the operation of the gas truck by the agent of the gas company was the direct, immediate cause of the injury, without which it would not have occurred, in such case you would have a right to find a verdict against the gas company but, as I said, in order to find a verdict against this particular truck you must be satisfied by the greater amount of truth that this particular truck, named as defendant, was operated negligently and caused the injury and without such negligence on the part of this truck such injury would never have occurred".

The first portion of the third sentence in the foregoing quoted charge, reading, "If you are not satisfied as to what truck it was or not satisfied that any truck of the gas company caused this injury, you would have no right to find any verdict against this particular truck named as defendant" is somewhat confusing and misleading, but when the entire charge thereabout is considered, it is quite clear that this portion of the trial Judge's instructions to the jury related solely to its examination of the testimony concerning the liability of the named truck. In fact, the error complained of by the appellant is "that the complaint contained specific allegations that the alleged damages were inflicted by the particular truck which was made a party-defendant, and did not contain any general allegations of negligence on the part of the defendant Carolina Butane Gas Company, Inc., except through that instrumentality".

There were, however, specific allegations of negli-gence on the part of an agent and employee of the appellant in the operation of an instrumentality (harmless within itself) belonging to the appellant and while engaged about its business. Therefore, as hereinbefore indicated, we find no error in the charge of the trial Judge.

The appellant was in nowise misled in its defense of this case by the allegation in the complaint that a truck certain was negligently, etc., operated by one of its agents and employees. The testimony in behalf of the appellant was that at the time the respondent was injured, it owned and operated only two trucks in the delivery of Butane gas in the territory which it serviced, one of which was in another county, and one on the highway in Marion County on which the respondent received his injuries, facts peculiarly within its knowledge.

Incidentally, we do not find any testimony in the record relating to the Serial Number and South Carolina License Number of either of the appellant's trucks used in its business of delivering Butane gas at the time of the injury to the respondent. However, there is testimony that the truck viewed at the home of Mr. Richardson, one of appellant's truck drivers, and the driver who admittedly was operating one of its trucks on the highway where the accident occurred and at approximately the time thereof, was a silver looking truck with a Butane sign on the side of it. The truck which collided with the pick-up truck being operated by the respondent, was described by an eye witness to the collision as a "silvery truck", and having lettered on its side, "Butane Gas". The lack of any testimony as to the numbers above referred to may explain the verdict of the jury against the appellant alone.

For the reasons stated herein, all exceptions are overruled, and the judgment is affirmed.

Fishburne, Stukes, Taylor and Oxner, JJ., concur.