**SEABOARD AIR LINE RAILROAD COMPANY, Plaintiff,**

v.

**COASTAL DISTRIBUTING COMPANY,** a North Carolina Corporation and Charles David Hill, Jr., Defendants.

No. C/A 66–284.

United States District Court
D. South Carolina,
Columbia Division.

Sept. 20, 1967.

H. Simmons Tate, Jr., Boyd, Bruton, Knowlton & Tate, Columbia, S. C., for plaintiff.

J. Means McFadden, Robinson, Mc-Fadden & Moore, Columbia, S. C., for defendant Coastal Distributing Co.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER

DONALD RUSSELL, District Judge.

This is an action, instituted by the plaintiff railroad, to recover damages sustained by its locomotive as a result of a crossing collision between such locomotive and a truck belonging to the corporate defendant (hereinafter called Coastal) and driven by the latter's employee Hill.

Both Hill and Coastal answered and counterclaimed.

On the day before trial, the railroad settled the counterclaim of Hill, taking from him a release. While it did not give a release to Hill covering its claim against him, it did on the morning following, in open court, move for dismissal of its action against Hill and has stated in the record that it asks no judgment on its claim against Hill.

When advised of these transactions between its co-defendant Hill and the railroad, Coastal moved for dismissal of plaintiff's action, contending that the release of Hill operated as a release by way of an estoppel in its favor also.

Ruling on Coastal's motion was reserved and the testimony on the respective claims of the railroad and Coastal was taken.

For purposes of determining the issues raised by the claim of the plaintiff and the counterclaims of the defendants, as well as the motion of Coastal for dismissal of plaintiff's claim against it, I make the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. At about 9:00 o'clock on the morning of March 10, 1966, a truck owned by Coastal and operated by its employee Hill, traveling west toward State Secondary Road 22, crashed into the front part of an engine of the railroad traveling south, at a grade crossing on State Secondary Road 326, about one and a half miles south of Cheraw, South Carolina.

2. The railroad crosses the highway at the point of the collision at approximately right angles. There is a State highway warning sign, indicating the crossing, located approximately one hundred eighty (180) feet from the crossing along the side of the road which the truck was traveling. There is, also, a railroad "cross-buck" some twenty feet from the crossing.

3. The crossing is situated in open, relatively level terrain. On the date in question, the weather was clear and visibility was unimpaired down both the highway and the railroad right-of-way. For both the driver of the truck and the railroad crew there was an unobstructed

view for several hundred feet of the crossing.

4. The truck was proceeding at the time of the impact at a moderate rate of speed and should have been able to stop, if required, within about seventy-five (75) feet. The train, on the other hand, while consisting only of a diesel engine and a caboose, and though it was traveling at a speed of about fifty miles per hour, would have required several hundred feet to stop.

5. Several members of the train crew (but not the engineer who was in the opposite side of the engine from the approaching truck) saw the truck of Coastal. They testified that they assumed such truck would stop and, only when it was too late to stop the train, did they recognize that the truck was not going to stop.

6. The train crew testified that all signals indicating the approach of the train to the crossing, as required by statutory law of this State (Section 58–743, Code of Laws of South Carolina, 1962), were given. Hill, the driver of the truck, testified he did not hear the signals given. In view of the positive testimony of the train crew and the negative character of the testimony of the truck driver, I conclude that the statutory signals were given.

7. Hill had often, before this accident, traveled this highway and was acquainted with the regular train schedules using the crossing in question. This particular train, however, was a work-train, operating at a time when it was not customary to expect a train at such crossing.

8. While Hill testified he did not see the train until too late, there was no reason why, had he looked or taken any precautions, he should not have seen the train in ample time to stop his truck. The only reasonable conclusion is that he assumed no train would be operating at the particular time and failed to look for any approaching train.

9. On the day prior to that fixed for the trial of this action, the plaintiff reached an agreement with Hill. For a consideration of Two Thousand Five Hundred ($2,500.00) Dollars, Hill released the plaintiff of any and all claims on account of any injuries sustained by him as a result of the collision; and, when the trial of the action was begun the next morning, counsel for the railroad answered that a settlement of Hill's counterclaim had been reached and moved successfully to dismiss its own action against Hill. It is obvious, and I so find, that these two actions taken by the plaintiff, were parts of a single transaction. It would be naive and unreasonable to assume that the dismissal by the railroad of its claim against Hill was unrelated to the settlement made by it with Hill. The two—the release of the railroad by Hill and the dismissal of the action against Hill by the railroad—carried out, for all practical purposes, simultaneously—were, in my opinion, parts of one, integrated transaction, intended to settle all claims by and between the plaintiff and Hill.

As the basis of such findings of fact, I make these conclusions of law:

## CONCLUSIONS OF LAW

1. There is jurisdiction herein on the basis of diversity of citizenship and jurisdictional amount.[1]

2. A preliminary issue to be resolved involves Coastal's motion to dismiss the railroad's action against it. The motion is predicated upon the claim that the railroad's settlement with Hill, Coastal's employee, in turn exonerated it (Coastal), since the latter's liability rests solely on the doctrine of *respondeat superior*. I am of opinion the motion should be sustained.

■ Contrary to the argument of the railroad, Coastal and Hill, though suable jointly (Cravens v. Lawrence, 1936, 181 S.C. 165, 169, 186 S.E. 269; Parker v. Bissonette, 1943, 203 S.C. 155, 163, 26 S.E.2d 497, 147 A.L.R. 773; Davenport v. Southern Ry. Co., 4 Cir., 1905, 135 F. 960, 962–963;) are not strictly joint-tort-

1. See, Annotation, 47 A.L.R.2d 651; Hamer v. Chilton (D.C.S.C.1965) 37 F.R.D. 542, 543.

feasors. 35 Am.Jur., Sec. 535, p. 963; 76 C.J.S. Release § 50, p. 689. The liability of Coastal, admittedly resting solely on the principle of *respondeat superior*, is derivative and secondary. Mackey v. Frazier, 1959, 234 S.C. 81, 84, 106 S.E. 2d 895, 899; Simpson v. Townsley, 10 Cir., 1960, 283 F.2d 743, 746, 92 A.L.R. 2d 526, with annotation; Giles v. Smith, 1949, 80 Ga.App. 540, 56 S.E.2d 860, 862; Pinnix v. Griffin, 1942, 221 N.C. 348, 20 S.E.2d 366, 369, 141 A.L.R. 1164; Pangburn v. Buick Motor Co., 1914, 211 N.Y. 228, 105 N.E. 423, 425.

 That Coastal's liability on such ground is not to be measured by the rules applicable generally to that of strict joint-tortfeasors is well illustrated in the authorities. Thus, a covenant not to sue, which ordinarily does not release another joint-tortfeasor from liability, does operate as a release of the master, liable only under *respondeat superior*, if given to the servant responsible.[2] Terry v. Memphis Stone and Gravel Company, 6 Cir., 1955, 222 F.2d 652, 653; Kelly v. Ford Motor Co., 1957, 104 Ohio App. 185, 139 N.E.2d 99, 102. Again, while there is no right of contribution between strict joint-tortfeasors (Atlantic Coast Line R. Co. v. Whetstone, 1963, 243 S.C. 61, 68, 132 S.E.2d 172; Brown v. Southern Ry. Co., 1918, 111 S.C. 140, 152, 96 S.E. 701; Hills v. Price, D.C.S.C., 1948, 79 F.Supp. 494, 495-496), the right of a master mulcted in damages under *respondeat superior* to recourse over against his servant is well-established. Lankford v. Ryder Truck Systems, Inc., D.C.S.C., 1967, 41 F.R.D. 430, 431-432; Hills v. Price, supra, 79 F.Supp. p. 496. And, when sued jointly with the servant, a judgment against the master alone, based upon *respondeat superior*, cannot stand. Chapman-Storm Lbr. Corp. v. Minn.-S.C. Land & Timber Co., 1937, 183 S.C. 31, 34, 190 S.E. 117; Le Gette v.

Carolina Butane Gas Co., Inc. et al., 1947, 210 S.C. 542, 549, 43 S.E.2d 472.

 Recognizing, then, that Coastal's liability is thus merely derivative and secondary, it logically follows that the release, exoneration, "acquittal" of the servant Hill operates as a release or acquittal of Coastal. This is not merely upon the theory that the employer Coastal is thereby denied the right to recover over against the employee, "but upon the ground that the sole basis of liability is the negligence or wrongdoing of the employee imputed to the employer under the doctrine *respondeat superior*; the acquittal of the employee of wrongdoing conclusively negatives liability of the employer." 35 Am.Jur., pp. 962-3; New Orleans & N. E. Railroad Co. v. Jopes, 1891, 142 U.S. 18, 24, 12 S.Ct. 109, 35 L.Ed. 919. Any other rule would be both illogical and unjust. In short, if he, through whom liability derives is exonerated, the only rational basis for liability against the party secondarily and derivately liable is lost. Cf. Travelers Ins. Co. v. Allstate Ins. Co., 1967, S.C., 155 S.E.2d 591, 593.

The railroad argues, though, that it has not released or exonerated Hill and that, while it took a release from Hill of any claim by him against it on his counterclaim, it in turn gave no release of its claim against him. It may be true that no release of Hill was included in the agreement given the railroad by Hill; but I must look at all the circumstances to determine whether, as a part of the whole transaction, the railroad had not *in fact* released or exonerated Hill. Immediately after settling Hill's counterclaim and at the commencement of trial, the railroad took a dismissal of its claim against Hill. For this Court to hold that such simultaneous dismissal by the railroad of its action against Hill, taken at a time and under circumstances when the trial and resulting adjudication

---

2. While such covenant does not release joint-tortfeasors not covered thereby credit for the amount paid under such covenant ordinarily must be given against the final judgment rendered on the basis that the injured party is not entitled to be paid more than his damages. Powers v. Temple, S.C., 156 S.E.2d 159; Ramsey v. Camp, 254 N.C. 443, 119 S.E. 2d 209, 94 A.L.R.2d 348.

**344**

would relieve Hill forever of liability, was not an integral part of the settlement with Hill violates common sense. The "totality" of the simultaneous transactions between Hill and the railroad involved not merely the settlement of Hill's claim against the railroad but also the dismissal and release of the railroad's claim against Hill.

Brazell Bros. Contractors v. Hill, 1964, 245 S.C. 69, 138 S.E.2d 835, relied on by the railroad is not in point. There, the plaintiff's insurance carrier settled the defendant's counterclaim, without the knowledge of its assured and "without exacting in return an acquittal from the claim asserted against him (the defendant)" by the plaintiff. In this case, on the other hand, the railroad itself (not its insurer) effected a settlement and, simultaneously and as an integral part of that transaction engineered by it, proceeded to dismiss or "acquit" its claim against Hill. It is this simultaneous dismissal by the plaintiff of its action against the servant, a circumstance not present in the *Brazell* Case, that works the release of Coastal.

The motion of Coastal for a dismissal of plaintiff's action against it is accordingly granted.

There remains for determination the counterclaim of Coastal.

■ I am of the opinion that such counterclaim is not sustainable. The driver of the truck, under any view of the case, was contributorily negligent and such contributory negligence bars any recovery herein by Coastal against the railroad. Wingate v. Seaboard A. L. Ry. Co., 1964, 244 S.C. 332, 337–338, 137 S.E.2d 258.

I have not considered whether the railroad, absent exoneration of Hill, would be entitled to recover on its cause of action against Coastal. Inquiry of whether there was negligence on the part of the railroad, contributing to the accident thereby barring recovery by it, is made unnecessary by my previous determination that Coastal, as a matter of law, was

exonerated by the "acquittal" from liability of its employer.

■ Since the railroad is barred from recovery on its claim and, similarly, Coastal is without rights under its claim, it seems appropriate that the costs herein should be equally divided between Coastal and the railroad.

Judgment in accordance herewith shall be entered, and

It is so ordered.