101 N.J. Super. 363 (1968)
244 A.2d 344
MAYFAIR FABRICS, PLAINTIFF,
v.
HENRY HENLEY, ET AL., DEFENDANTS. WILLIAM B. NATELL, PLAINTIFF,
v.
HENRY HENLEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 5, 1968.
*365 Mr. Robert F. Colquhoun for plaintiffs, William B. Natell and Jean Natell.
Mr. Daniel Crystal for defendant, Preben Jensen (Messrs. Cohn and Lifland, attorneys).
ACKERMAN, J.S.C.
This is a further sequel to the decision in Mayfair Fabrics v. Henley, 48 N.J. 483 (1967), hereinafter referred to as "Mayfair Fabrics  1", which dealt with the interpretation and effect of an exculpatory clause and provision for insurance in a commercial lease between *366 William and Jean Natell, the owners and landlords of a commercial building, and the Mayfair Fabrics, Inc., a New Jersey corporation, which was the sole tenant of the building.
On August 10, 1963, while the business operations of the tenant of knitting and manufacturing cloth products were in progress, with its employee Preben Jensen at work in the building, a disastrous fire occurred. The building was damaged to the extent of $33,179.20, for which the landlords were fully reimbursed by their fire insurance carrier. The tenant suffered damage in the amount of approximately $251,200, consisting of direct property damage to its machinery, equipment and materials in the amount of $179,333.55, for which it was fully reimbursed by its fire insurance carriers, plus out-of-pocket property losses in the amount of $11,155.75 and a loss profit claim of $60,728.83 which were not covered by insurance.
Cross-suits were commenced by the landlords and by the tenant charging each other with negligence and seeking to recoup the full amount of losses sustained. As is apparent from the facts recited above, the suit by the landlords was wholly a subrogation action by its fire insurance carrier and the action by the tenant was in part a subrogation action. The landlords, in addition to suing the corporate tenant, joined Jensen, the tenant's employee, as a defendant, alleging that the fire was caused by his negligence.
A succession of motions for summary judgment followed, each dealing with the effect of the following clause which was contained in a typewritten rider attached to the printed form of the lease as paragraph 28 thereof:
"It is mutually agreed that the landlords will insure the building against fire and the tenant agrees to carry fire insurance upon all equipment and personal property used, placed or stored in, on or near, the leased premises and in no event shall the landlord be responsible or liable for loss or damage to the tenant's property by fire, explosion or otherwise. In the event that the hazards of the tenant's business makes it impossible for landlords to obtain fire insurance at standard rates covering the said building then this lease shall at the option of the landlord be null and void."
*367 In Mayfair Fabrics  1, supra, the Supreme Court, ruling upon the landlords' motion that they were exculpated from liability to the tenant, held that the clause, contained in a commercial lease between parties having equal bargaining power, was a valid private contractual arrangement between the parties providing for mutual reciprocal obligations to insure their respective properties against damage by fire and distributing the risks of loss between them. It concluded that the landlords were relieved of liability to the tenant for its direct property damage, but declined to pass upon the question whether the tenant's claim for loss of business profits was barred by the clause since that question had not been briefed or argued.
Upon remand, cross-motions for summary judgment were made by the landlords and the tenant. The landlords moved for judgment that the exculpatory clause barred the tenant's suit against them for loss of business profits, and the tenant moved for judgment against the landlords that the clause relieved it of liability to the landlords for their property damage to the building. The employee Jensen, apparently believing that if the tenant's motion were granted the landlords' suit against him would fall as a matter of course, did not formally join in the tenant's motion or file a motion of his own asserting that he was entitled to the exculpation claimed to be vested by the clause in his employer.
In Mayfair Fabrics v. Henley, 97 N.J. Super. 116 (Law Div. 1967), hereinafter referred to as "Mayfair Fabrics  2," this court held that the clause in the lease, viewed realistically as a normal, commonsense effort by businessmen to allocate between them the cost and expense of risks of property damage for fire, was an undertaking by each of the parties to secure adequate insurance against loss to properties, and that as between them the clause constituted an agreement to look to that insurance alone to recoup any loss and to relieve the other from liability for loss even though caused by the other's negligence. It held that the tenant was relieved by the clause from liability to the landlords even though *368 there was no express language in the clause, similar to that in favor of the landlords, explicitly granting exculpation to the tenant. The Court also held that the clause relieved the landlords from liability to the tenant for indirect as well as direct property losses and that the landlords were therefore not liable to the tenant for any loss of business profits as a result of the fire. The motions for summary judgment by both the landlords and the tenant were therefore granted, and the net effect thereof, at the trial level, was to terminate the litigation between the landlords and the tenant and to leave them, and their insurance carriers, to bear their own losses.
The landlords now assert that Jensen is not entitled to the exculpation granted to Mayfair Fabrics, Inc., his employer. They assert that the clause does not contain express language granting exculpation to agents, servants or employees of the tenant and claim that any limitation of liability granted by the clause is personal to the tenant as a corporate entity and that it does not benefit its officers or employees. Jensen asserts on motion for summary judgment now before the Court that the exculpation granted to his employer bars suit by the landlords against him.
In order that this case may be considered in the proper framework, certain points should be noted at the outset. In the first place, the fact that this is a subrogation claim by the landlords' fire insurance company against Jensen, rather than a suit for the direct benefit of the landlords, has no determinative force in the decision of the matter. Subrogation is a favored remedy but it is clear that the subrogee's rights arise no higher than those of the subrogor. Here the question is the effect and meaning of the clause as between the contracting parties, the landlords and the tenant. As pointed out in Mayfair Fabrics  2, supra, the New Jersey standard fire policy permits an insured to waive rights of recovery against any party before loss, and if the landlords granted exculpation by the clause in question to the employees of the tenant, as well as to the tenant as a corporate *369 entity, the fire insurance company as subrogee cannot complain and is bound thereby.
Second, it is clear that any negligence of Jensen occurred while he was acting within the scope and course of his employment. The contentions of the landlords with reference to Jensen's negligence, contained in the original and supplemental pretrial orders in the cause, are as follows:
"On the date in question, in the early morning hours, the defendant, Preben Jensen, was the servant, agent and employee and in charge of the defendant, Mayfair Fabrics manufacturing operation when due to the negligent maintenance of the machinery, under exclusive control of Mayfair Fabrics, certain overload was placed on electrical circuits installed and maintained by Mayfair Fabrics. The defendant, Preben Jensen, was negligent in that he permitted such overload to work with full knowledge of the condition of the equipment maintained by Mayfair Fabrics, and negligently caused the switches controlling said equipment to be turned off and then again switched on and did by his negligence switch on other switches, causing fuel oil to be pumped upon the electrical equipment, which was defective, causing the fire in question."
It is clear that, absent a release of liability under the exculpatory and insurance clause, the tenant as employer or master of Jensen would be liable to the landlords for his negligence under the doctrine of respondeat superior and that Jensen himself would be liable to the landlords for his own negligent acts, Moss v. Jones, 93 N.J. Super. 179 (App. Div. 1966), and that the landlords' fire insurance carrier, having paid the landlords' loss, would normally be subrogated to the landlords' rights to recover from the tenant and from Jensen.
It is the Court's conclusion, however, that Jensen as employee is entitled to the limitation of liability granted by the clause to Mayfair Fabrics, Inc., his employer. Although neither the efforts of counsel nor extensive research by the Court have brought to light any New Jersey decisions which are directly dispositive of the matter, the general rule is that an employee is entitled to the benefit of an exculpatory *370 clause vested in an employer in circumstances such as those presented in this case.
The governing principle is stated in subsection (2) of section 347 of the Restatement, Agency 2d, as follows:

"* * * * * * * *
(2) Where, because of his relation to a third person, a master owes no duty, or a diminished duty, of care, a servant in the performance of his master's work owes no greater duty, unless there has been reliance by the master or by a third person upon a greater undertaking by the servant."
Comment (b) on subsection (2) provides in part:
"In most states landowners have, in general, no duty to warn trespassers of dangerous static conditions of the land * * * In some states they are not liable to a trespasser for ordinary negligence in their activities. By statute or decision in many states, a host is only under a duty of slight care to his guests. An employer may by contract relieve himself from liability for ordinary negligence to purchasers, bailors and beneficiaries. In all of such cases, a servant or other agent is not required to meet a higher standard than that required of the principal. (Emphasis added)
The same principle is stated in comment d. to section 350 of the Restatement:
"An agent acting for a master or other principal normally owes no greater duty of care than his principal, who by contract with another can relieve himself from liability for harm caused by ordinary negligence or who may have less than the normal duty of care because of a special relation, such as a host to a guest in an automobile. See § 347, Comment b."
See also §§ 343, 345, 359 (B).
The Reporter's Notes contained in the Restatement, Agency 2d, Appendix, with respect to § 347 state as follows:

"* * * * * * * *
A servant of a carrier or other contracting party has the benefit of limited liability resulting from the contract between the servant's employer and the third person: Schoeffer v. United Parcel Serv. of N.Y., 277 App. Div. 569, 101 N.Y.S.2d 451 (1950); Employers' Fire Ins. Co. v. United Parcel Service of Cincinnati, 89 Ohio *371 App. 447, 99 N.E.2d 794 (1950); Parker v. Bissonette, 203 S.C. 155, 26 S.E.2d 497, 147 A.L.R. 773 (1943)." (at p. 566)
The decision in Schoeffer v. United Parcel Service of New York, 277 App. Div. 569, 101 N.Y.S.2d 451 (App. Div. 1950), is in point. There the Court said:
"The agreement of June 24, 1949, was for the storage of plaintiff's furs and for their delivery to her when she requested them. The $3,000 limitation of liability clearly applied to any loss occurring while Morris or someone in his employ returned the furs to plaintiff. If an employee of Morris carelessly lost the furs entrusted to him for delivery to plaintiff, it is clear that the employee, if sued for his negligence, could invoke the $3,000 limitation of liability. * * *
Defendant was not an interloper; it was not a stranger to the contract of bailment; it was not a tortious third party; indeed it was engaged in performing the bailment agreement when the furs were stolen. It has been urged with much force that for all practical purposes the defendant was Morris inasmuch as it had been properly selected to carry out an essential part of the bailment agreement. In the language of Section 347 of the Restatement of the Law of Agency: `An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal'."[1] (101 N.Y.S.2d, at p. 453)
In Employee's Fire Ins. Co. v. United Parcel Service, 89 Ohio App. 447, 99 N.E.2d 794, 799 (Ct. App. 1950), the Court ruled:
*372 "The question naturally arises as to the extent of the defendant's liability. It was the representative of Jenny, Inc., engaged in performing its contract, when the delict occurred. Jenny, Inc.'s liability was limited to $100. Is defendant's liability similarly limited? We are of the opinion that it is so limited. Section 347 of Restatement of the Law of Agency is: `An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal.' Had the principal acted in person in carrying this coat and had been sued for the damage done, no matter what the form of action, its liability would have been limited to $100. When it engaged the defendant to get the coat for it, it clothed the defendant with all the authority and rights which it, the principal, had against the owner, including the right to have liability limited to $100. It was a defense pro tanto, available equally to Jenny, Inc. and any and all in possession of the coat under its authority."
In Berger v. 34th Street Garage, 3 N.Y.2d 701, 171 N.Y.S.2d 824, 148 N.E.2d 883 (Ct. App. 1958), plaintiff, an expressman, was engaged in the business of picking up merchandise for various shippers for delivery to connecting carriers under contracts limiting his liability to $50 for each shipment. He stored his truck and contents in the defendant's garage and, while thus stored, the contents disappeared. It was held that the plaintiff, as bailee, had a right to sue the defendant on behalf of the shippers, his bailors, but that the defendant was entitled to the limited liability enjoyed by plaintiff. The Court of Appeals of New York ruled:
"Upon such a showing, the defendant garageman was not an interloper or stranger to the original bailment, but was in truth and fact the plaintiff's chosen representative authorized to discharge for the time being their own responsibilities to the original bailor. Such being the fact, the garageman became an agent ad hoc and, while acting pursuant to his authority, was entitled to `such immunities of the principal as are not personal to the principal' which, in this instance, was the limited liability as fixed in the original shipping documents (Restatement, Agency, § 347; Schoeffer v. United Parcel Service of N.Y., 277 App. Div. 569, 101 N.Y.S.2d 451; Collins & Co. v. Panama R. Co., 5 Cir., 197 F.2d 893, certiorari denied 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677)." (171 N.Y.S.2d, at p. 826, 148 N.E.2d, at p. 884.)
*373 Other authorities supporting the rule of the Restatement are Ivy H. Smith Co. v. Warffemius, 201 Md. 367, 93 A.2d 764 (Ct. App 1953); Herzog v. Mittleman, 155 Or. 624, 65 P.2d 384, 109 A.L.R. 662 (Sup. Ct. 1937); Hudson's Bay Co., Fur Sales, Inc. v. United Air Lines, 33 Misc.2d 930, 225 N.Y.S.2d 573 (Sup. Ct. 1962); Revillon Freres v. Cassell Trucking Co., 24 A.D.2d 845, 264 N.Y.S.2d 24 (App. Div. 1965); Harding v. Ohio Casualty Ins. Co., 230 Minn. 327, 41 N.W.2d 818 (Sup. Ct. 1950); 3 Am. Jur.2d, Agency, § 300, p. 660.[2]
In the few reported cases found which deal with the question as to whether or not an employee or agent is entitled to the benefit of the employer's release from liability for damage under an exculpatory clause in a lease, the employee or agent has been held entitled to the benefit thereof. In Surface v. Chicago, Milwaukee & St. Paul Railway Company et al., 191 Ill. App. 261 (App. Div. 1915), a railroad company leased property located on its right of way to a lessee for use as a granary. The lease provided that the lessee "assumed the risk of all loss and damage to the buildings. * * * which may arise from fire escaping from engines operated upon the railway of lessor. * * * that the lessor shall in no event be or become liable for any loss or damage that may occur. * * * whether said loss or damage be caused by the negligence of the lessor or its employees or otherwise." *374 The above provision by its terms granted exculpation only to the lessor. The Court held, however, that exculpation was granted to another railroad being sued for negligence in the destruction of the buildings by fire, saying:
"If the Chicago, Indiana and Southern Railroad Company permitted the engine of the other defendant upon its tracks under circumstances and conditions that made it responsible for its acts, it would seem that the stipulations in the lease should apply to both companies. It seems to us that the stipulations cannot be construed as protecting merely the corporation from liability for negligence and leaving its agents and servants liable." (191 Ill. App., at p. 268)
In Hyman v. 230 So. Franklin Corporation, 7 Ill. App.2d 15, 128 N.E.2d 629 (App. Div. 1955), the Court sustained the validity of an exculpatory clause in a lease relieving a landlord from liability for injuries to tenant's property due to negligence of the landlord or his servants and, applying the principle that an agent may be privileged to do an otherwise tortious act because of a privilege held by his principal under which he acts, held that an agent who managed the premises was entitled to benefit of exculpatory provisions of the lease.
A similar result was reached, without specific comment on the point, in the recent case of Rock Springs Realty, Inc. v. *375 Waid, 392 S.W.2d 270, 15 A.L.R.3d 774 (Mo. Sup. Ct. 1965), cited in Mayfair Fabrics  2, supra, where the court sustained the validity of an exculpatory clause in a lease against loss or damage from fire and held that both the tenant and its employee, who allegedly caused the fire, were entitled to exoneration from liability under the lease. See also Annotation, "Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant from Liability on Account of Fire," 15 A.L.R.3d 786 (1967); Annotation "Validity, Construction, and Effect of Agreement, in connection with Real Estate Lease or License by Railroad, for Exemption from Liability or for Indemnification by Lessee or Licensee, for consequences of Railroad's own Negligence," 14 A.L.R.3d 446 (1967); Annotation, "Effect, on Nonsigner, of Provision of Lease Exempting Landlord from Liability on Account of Condition of Property," 12 A.L.R.3d 958 (1967).
Supporting the rationale of these decisions is the general rule, followed by the decisions of our courts, that a release given by a third person to a master or servant serves to relieve a servant or employee from liability for negligence to the third person, and that a document of release is so construed where no rights are expressly reserved to proceed against the servant or employee. Aljian v. Ben Schlossberg, Inc., 8 N.J. Super. 461 (Law Div. 1950); United States Fidelity and Guaranty Co. v. Goetze, 108 N.J. Eq. 210 (Ch. 1931); Annotation, "Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa," 92 A.L.R.2d 533 (1963); 35 Am. Jur., Master and Servant, § 535, p. 963; Restatement, Torts, § 885; Restatement, Agency 2d, §§ 217 (A), 359 (B).
The rule of the Restatement and of the other pertinent authorities referred to above is, therefore, that where a valid agreement is entered into between an employer and a third person, exculpating the former from liability to the latter for ordinary negligence, an employee is ordinarily entitled to the same exculpation as his employer, even though *376 he is not expressly named as a beneficiary of such exculpation. The rule is applicable here. To use the words of the Court in Miller v. Muscarelle, 67 N.J. Super. 305, 330 (App. Div. 1961), certification denied 36 N.J. 140 (1961), "Upon consideration of the foregoing authorities and of their several underlying rationales, and in the absence of clear controlling contrary authority in this State, we are of the view that the Restatement principles reflect New Jersey law, and we will be guided by them, as well as by our cases, insofar as they are applicable to the issues * * *."
The application of the rule is peculiarly appropriate here and conforms to the interpretation of the clause made in Mayfair Fabrics  1 and Mayfair Fabrics  2, supra, and the intention of the contracting parties gleaned from the language which they used, viewed in the light of the circumstances in which they used it. We have held that the landlords and the tenant, acting as reasonable businessmen in the circumstances, intended to mutually exculpate each other from liabiilty for negligence and to look solely to their property insurance to recoup their property losses caused by fire. They contemplated that the cost of the insurance was to be paid for by the landlords out of rentals received from the tenant and that the tenant would pay such rentals, as well as its own insurance premiums, out of profits derived from its business operations conducted on the premises. They therefore clearly intended that insurance protection should be provided as a cost or expense of business, but that the ultimate burden of loss should fall upon the insurers.
Having so agreed and having mutually exculpated each other as principals, neither had any advantage to be gained by retaining a right to hold the other's employees liable as the ultimate source of payment of a business loss. Such result would be for the sole benefit of their insurers. To impoverish one of their own employees by imposing such loss upon him, without benefit to themselves, could only serve to impair the working force employed in the venture and to disrupt or adversely affect the business operations upon *377 the premises which both parties desired to be successful. And it is clear that complications directly detrimental to each other as master or employer might ensue if the exculpation were not broad enough to cover employees. Although normally it is the master or employer who has a right of indemnity against a negligent employee under traditional concepts, the contrary is sometimes the case. As reasonable businessmen, the contracting parties might contemplate that if an employee of either were held liable for negligence in causing a fire loss but not entitled to the benefit of the employer's exculpation, there would be distinct possibility that the acts or omissions for which the employee was held liable might be such as to entitle him to indemnification from his employer. See Hagen v. Koerner, 64 N.J. Super. 580 (App. Div. 1960).
In the usual case where an employer is held liable for the negligent acts of an employee, the employer's liability is a vicarious one imposed under the doctrine of respondeat superior. The Supreme Court in McAndrew v. Mularchuk, 33 N.J. 172, 191 (1960), has stated the following with respect to the underlying rationale of that doctrine:
"The responsibility of the master or principal for the negligent acts of a servant or agent, committed while performing his delegated tasks, has always existed in this State as a matter of public policy. One basis for the doctrine is that it creates an incentive to be careful in the selection, instruction and supervision of such persons. And from the standpoint of the injured third person, the master is better able to bear the burden of the losses resulting from such tortious acts by absorbing them as an incident of the operation of his enterprise." (Emphasis added)
In 2 Harper and James, The Law of Torts (1956), § 26.1, p. 1363, the following is stated with respect to the doctrine of respondeat superior and the practicalities of the enforcement against an employer and his negligent employee of liability arising from a tort to a third person:
"Another thing to be borne in mind is that by and large vicarious liability means that A (e.g., the employer) alone pays the damages. *378 It is true that vicarious liability on the part of A is not necessarily inconsistent with liability on the part of B [e.g., the employee], too. Indeed in most cases both A and B are theoretically liable under the current law. Yet in the vast majority of cases plaintiff seeks satisfaction from the employer alone. It is also true that in the typical case A, when he has satisfied his vicarious liability for B's wrong, has an action over against B for indemnity. Yet again in the vast majority of cases this right to recovery over is purely theoretical and is not pursued. * * * The fact that the ultimate onus of vicarious liability rests in practice on the employer is a good thing from several points of view. If it were passed on to the negligent workman, that would be a blow to him as crushing (financially) as the original injury was to the victim, and would have like tendency to pauperize him and his family. Employees are ill equipped to provide for the distribution of such losses through liability insurance or otherwise and do not in fact do so. The whole structure of our economic and business practices and institutions puts the employer in a better position than the employee to absorb and distribute these costs. * * *"
In Pedrick, "Civil Liability of an Employee to His Employer, His Fellow Workers, and Third Parties: United States Report," 18 Rutgers L. Rev. 489, 505 (1964), the author stated:
"* * * As suggested in earlier passages, but with special force as regards third party claims, it is difficult to believe that the employer and employee would in this day and age expect the employee to assume the cost of losses negligently inflicted on third parties as an incident to the operation of the business. The magnitude of possible losses is beyond the employee's means and the compensation paid to him does not include any amount earmarked for liability insurance. The costs of third party claims are typically met by the employer through insurance, with premiums regarded as a cost of the business operation. In some large enterprises the employer may act as a self-insurer and the price for his product ought to reflect a charge to cover third party claims.
The practice of employer provision of enterprise liability insurance is socially desirable and its effect is to distribute among the consuming public the inevitable costs of third party claims arising from the conduct of the business. The added circumstance that the employer's indemnity action has largely fallen into disuse and the general practice of liability insurance companies not to pursue uninsured employees on subrogated indemnity claims, provide a persuasive basis for the conclusion that in the employment relationship, the employer and employee do not contemplate that the employee will underwrite his liability to third parties, a liability *379 chargeable against the enterprise. The implied contract is, rather, that the employee is to have the benefit of an insurance arrangement effected by the employer. This does not mean that the employee is under no duty to use ordinary care and skill on the job. On the contrary, he is always subject to such a duty within the limits of human frailty. But the sanction for breach of the duty to work with care is the risk of discipline or discharge rather than complete and lasting financial ruin under a crushing indemnification judgment."
Reasonable businessmen operating in today's society generally expect that the ultimate burden of property losses arising from their business operations will be borne by the business, usually by insurance paid for out of the business, rather than by their individual employees. Coverage provided by the omnibus clause in automobile liability insurance policies paid for by the employer usually relieves a negligent employee of liability for automobile accidents which arise during the course of employment. As indicated above, actions by employers to enforce indemnity against their employees and actions by third persons to impose ultimate liability upon negligent employees, rather than upon their masters, in cases involving other types of business losses are now rare. See also Geiser, "Indemnity Agreements," 88 N.J.L.J. 645, 650 (1965). A realistic interpretation of the agreement before this court is that the parties did not intend to exculpate themselves, relieving themselves of liability imposed by the doctrine of respondeat superior, and thrust the ultimate burden of their business losses on subordinate employees under some doctrine of respondeat inferior. See Renee Cleaners, Inc. v. Good Deal etc., N.J., 89 N.J. Super. 186, 190 (App. Div. 1965), certification denied 46 N.J. 216 (1966); Mayer v. Fairlawn Jewish Center, 38 N.J. 549 (1962). They intended that the ultimate burden be borne by insurance.
Jensen's motion for summary judgment is granted.
NOTES
[1] As is apparent from the above, the language of Section 347 was changed when the Restatement, Agency 2d, was published, but the meaning thereof has not changed. As stated in the Reporter's Notes, Appendix, Restatement, Agency 2d:

"Sections 345, 346 and 347 deal with the defenses which an agent may have because he is doing an act which the principal would be privileged to do or is himself protecting the interests of the principal. Section 347 in its original form stated that `an agent acting in pursuance of his authority has the immunities of a principal which were not personal to the principal.' Reconsideration of this language has convinced the group that the word immunity was improperly used to cover situations for which other phrasing should be used. Hence the Section has been changed to read as it is at present, distinguishing between immunities, privileges, and the lack of duty or diminished duty of care which is owed to special groups of persons under some circumstances. This distinction is pointed out in § 217." (at p. 565)
[2] There is not complete uniformity and consistency in the results reached in the cases dealing with the construction and effect of provisions dealing with limitation of liability and exoneration from liability for negligence as they relate to railroads, steamship companies and other carriers in their functions as such. The problem commonly arises in connection with the interpretation of exculpatory clauses in "free passes" issued by railroads. These cases present somewhat different problems and different considerations of public policy and, in some instances, involve statutory provisions. They usually involve the question whether the benefit of the limitation or exculpation shall be granted to connecting carriers, terminals, stevedores, and the like, and do not involve conventional employer-employee situations such as we have in this case. In general these decisions support the rule of the Restatement. See Lunsford v. Cleveland Union Terminals Co., 170 Ohio St. 349, 165 N.E.2d 3 (Sup. Ct. 1960); McKaig v. Kansas City Terminal Railway Co., 355 S.W.2d 409 (Mo. Ct. App. 1962); Wilder v. Pennsylvania R. Co., 245 N.Y. 36, 156 N.E. 88, 52 A.L.R. 188 (Ct. App. 1927); Brown v. Terminal Railroad Assn. of St. Louis, 298 S.W.2d 471 (Mo. Ct. App. 1957); Hall v. North Eastern R. Co. (1875) L.R. 10 Q.B. (Eng.) 437; Bicknell v. Grand Trunk R. Co. (1900) 26 Ont. App. Rep. 431; A.M. Collins & Co. v. Panama R. Co., 197 F.2d 893 (5 Cir. 1952) certiorari denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677 (1952). Compare Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); Parker v. Bissonette, 203 S.C. 155, 26 S.E.2d 497, 147 A.L.R. 773 (Sup. Ct. 1943); Annotation "Contractual exemption from or limitation of liability for injury to passenger traveling on pass as available to one other than the carrier issuing pass," 147 A.L.R. 778 (1943).