Cheri McNEILEY and Donald Smith, Appellants (Plaintiffs),

v.

AYRES JEWELRY CO., a Wyoming corporation; and Charles Ayres, individually, Appellees (Defendants).

No. 92–256.

Supreme Court of Wyoming.

July 14, 1993.

James L. Edwards of Stevens, Edwards & Hallock, Gillette, for appellants.

Keith P. Tyler, Casper, for appellee Ayres Jewelry Co.

James R. Bell and Cynthia L. Harnett of Murane & Bostwick, Casper, for appellee Charles Ayres.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellants Cheri McNeiley and Donald Smith (the consignors) brought claims of negligence and breach of contract against Appellees Ayres Jewelry Co. (the consignee) and Charles Ayres after Ms. McNeiley's ring had been stolen from the consignee's store. The trial court entered a summary judgment in favor of the consignee and Mr. Ayres.

We reverse and remand.

The consignors present the following issues:

I. Was summary judgment against the appellants proper under Rule 56, W.R.C.P.?

II. Should summary judgment have been granted in favor of the appellants and against [the] appellees pursuant to Rule 56, W.R.C.P.?

The consignee was a family-owned jewelry store whose business included selling jewelry on consignment. Ms. McNeiley

owned an oval diamond ring which her brother, Mr. Smith, placed on consignment with the consignee. Some dispute exists over the actual value of the ring. Mr. Ayres' son, the consignee's president and manager, appraised the ring at $31,484. The parties agreed that $30,750 would be the selling price. The consignee claims that Ms. McNeiley subsequently agreed to reduce the selling price from $30,750 to somewhere in the vicinity of $19,000. The consignors insist that they agreed to consider offers for less than the initial selling price but that they did not agree to reduce the marked selling price.

On approximately May 17, 1991, a "foreign-looking" gentleman entered the jewelry store. Mr. Ayres waited on the customer. Mr. Ayres had retired from the jewelry business but was helping out in the store on the day this customer came in because his son was out of town. Mr. Ayres showed the customer several different pieces of jewelry, including the consignors' diamond ring. The customer ultimately made an offer on a watch and a pear-shaped ring which were on consignment. Mr. Ayres went to the back of the store to call the owners of the watch and the pear-shaped ring to ask whether they would accept the customer's offer. Mr. Ayres and a saleswoman stated in their depositions that Mr. Ayres returned the consignors' diamond ring to the display case before he went to the rear of the store. The customer followed Mr. Ayres to the back of the store but, while Mr. Ayres was trying to contact the owners by telephone, he abruptly left, saying that he had to go to the bank to get some cash. Shortly after the customer left the store, the employees and Mr. Ayres discovered that the consignors' diamond ring was missing. No one was sure how the customer managed to steal the ring. Neither the consignee nor the consignors had insurance which covered the ring.

The consignors initiated this lawsuit against the consignee for negligence and breach of contract. They later amended their complaint to include Mr. Ayres. The consignee, the consignors, and Mr. Ayres each moved for a summary judgment. The trial court entered an order of summary judgment in favor of the consignee and Mr. Ayres. The court's decision relied in large part upon the consignment agreement's risk-of-loss provision:

> Risk of loss from damage to or destruction of the consigned merchandise from any cause whatsoever from the time of receiving possession of same until the sale and delivery to a customer of the Consignee or until returned to the Consignor shall remain with the Consignor, and Consignor shall make such arrangements for insurance as he shall deem appropriate.

The court's decision letter stated:

> Defendants contend that the risk of loss provision in the consignment agreement prevents recovery by Plaintiffs. The provision insulates Defendants from liability for loss "from any cause whatsoever[."] It places the burden upon the Plaintiffs to obtain any insurance they consider appropriate. I do not see how this language can be interpreted any other way except to place the risk of loss from theft upon the Plaintiffs.
>
> Defendant Charles Ayres contends that he is also entitled to summary judgment because he was acting as an agent for Ayres Jewelry and is entitled to rely upon the language in the consignment agreement. To qualify as an agent, it is necessary that the alleged agent have power to alter the legal relations between the principal and third persons, that he is acting primarily for the benefit of another, and that the principal have the right to control him with respect to matters entrusted to him. The undisputed evidence is that Defendant Charles Ayres meets all of these qualifications.

The court concluded that, as an agent, Mr. Ayres was able to rely upon the consignment agreement's risk-of-loss provision.

█ A trial court's grant of a summary judgment is proper only if we can make a "dual finding that no genuine issue of material fact exists, and that the prevailing party was entitled to judgment as a matter of law." *Davidson v. Sherman,*

848 P.2d 1341, 1343 (Wyo.1993). If any doubt exists as to the meaning of a written instrument, there is a genuine issue of material fact with respect to the parties' intent, and granting a summary judgment is inappropriate. *Weaver v. Blue Cross–Blue Shield of Wyoming,* 609 P.2d 984 (Wyo.1980); *Meuse–Rhine–Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation,* 590 P.2d 1306 (Wyo.1979). A summary judgment is appropriate in a contract case only when no ambiguity exists in the instrument. *Metropolitan Mortgage & Securities Co., Inc. v. Belgarde,* 816 P.2d 868 (Wyo.1991). An ambiguous contract is one which either contains a double meaning or is obscure in its meaning because of indefiniteness of expression. *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595 (Wyo.1989).

The parties in this case dispute the meaning of the risk-of-loss provision. The consignors interpret the agreement to mean that risk of loss from "damage to or destruction of the consigned merchandise from any cause whatsoever" does not include loss from theft. They claim that the "any cause whatsoever" language related back to "damage to or destruction of" and, thus, anything which caused damage to or destruction of the ring would place the risk of loss on the consignors. The ring in this case, however, was not damaged or destroyed; it was stolen. The consignors maintain that, to shift the risk of loss from any imaginable cause, the agreement would have to say "all risk" rather than limiting the risk of loss to damage or destruction. *See Anderson Excavating and Wrecking Company v. Certified Welding Corporation,* 769 P.2d 887 (Wyo.1988); and *Allstar Video, Inc. v. Baeder,* 730 P.2d 796 (Wyo.1986). The consignors' interpretation is further supported by the fact that we construe a contract most strongly against the party who drafted it. *Kelliher v. Herman,* 701 P.2d 1157 (Wyo.1985).

The consignee and Mr. Ayres view the agreement as allocating all risks of loss to the consignors, including losses which re-

sult from negligence or theft. First, they contend that the agreement's use of the word "damage" can include theft. Damage is defined in BLACK'S LAW DICTIONARY 351 (5th ed. 1979), as: "Loss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property." Since theft can be construed as being a loss, it arguably comes within the definition of damage. Second, they argue that the agreement speaks of assigning the risk of loss to the consignors but that it does not mention any risk of loss being allocated to the consignee. They claim that, if the parties actually intended to limit the risk of loss being assigned to the consignors, the risks assigned to the consignee should have been specified. The consignee and Mr. Ayres also point out that the last clause of the provision says: "Consignor shall make such arrangements for insurance as he shall deem appropriate." Nothing in the provision requires the consignee to obtain insurance. If the consignee were to assume some of the risk of loss, the consignee should have been required to insure against those losses.

Given the foregoing interpretations, we conclude that the risk-of-loss provision was ambiguous in specifying how the risk of loss was to be allocated between the parties. The ambiguity created a genuine issue of material fact, and, consequently, the summary judgment in favor of the consignee was improvidently granted.

The summary judgment entered in favor of Mr. Ayres must also be reversed. The trial court found that Mr. Ayres was entitled to receive a summary judgment because the consignment agreement placed the risk of loss on the consignors and, as an agent, he could rely upon the agreement entered into by his principal.[1] Mr. Ayres cannot rely upon the risk-of-loss provision to support his summary judgment at this time given our conclusion that the provision was ambiguous in specifying how the risk was to be allocated. On remand, the parties' intent in allocating the risk of loss

---

**1.** The court also stated that Mr. Ayres was entitled to receive a summary judgment because, "[g]enerally, employees are not liable for business torts unless the employers are also liable."

Any reliance upon Mr. Ayres' status as an employee was misplaced. The depositions of Mr. Ayres and his son make it clear that Mr. Ayres was not an employee.

must be determined before Mr. Ayres can attempt to rely upon the risk-of-loss provision to protect him from liability.

The consignors offer several alternative arguments for reversing Mr. Ayres' summary judgment. They claim that Mr. Ayres could not rely upon the risk-of-loss provision for protection under an agency theory because sufficient evidence of a principal-agent relationship did not exist, and, even if Mr. Ayres was the consignee's agent, the general rule is that an agent is liable for his own negligence. It would be premature for this Court to address these questions before the ambiguity in the risk-of-loss provision is resolved.

In their second issue, the consignors request that this Court reverse the district court with specific directions that a summary judgment be entered against the consignee and Mr. Ayres. The consignors urge this Court to find that the consignee or Mr. Ayres, or both, was negligent under the doctrine of *res ipsa loquitur.* We decline such an invitation. A question of fact remains as to how the parties intended to allocate the risk of loss. Once the question of the parties' intent has been resolved and if the consignors' interpretation prevails, the consignors will be able to pursue their negligence and breach-of-contract claims. The ring's value can also be established at that time.

Reversed and remanded for further proceedings consistent with this opinion.