Cheri McNEILEY and Donald Smith, Appellants (Plaintiffs),

v.

AYRES JEWELRY CO., a Wyoming corporation; and Charles Ayres, individually, Appellees (Defendants).

No. 94–97.

Supreme Court of Wyoming.

Dec. 8, 1994.

James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, for appellants.

Keith P. Tyler, Casper, for appellee Ayres Jewelry Co.

James R. Bell of Murane & Bostwick, Casper, for appellee Charles Ayres.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellants Cheri McNeiley and Donald Smith (the consignors) appeal from the district court's order which granted a judgment in favor of Appellees Ayres Jewelry Co. (the consignee) and Charles Ayres.

We affirm.

## ISSUES

The consignors present three issues for our review:

Were Appellants afforded due process as guaranteed by the United States and Wyoming Constitution[s]?

Was the Judgment supported by sufficient evidence in accordance with W.R.C.P. Rule 52(a)?

Are Appellants entitled to a change of judge under the circumstances of this case?

## FACTS

The consignors sued the consignee and Mr. Ayres, individually, for breach of contract and negligence after a ring which the consignors had placed on consignment with the consignee had been stolen. The trial court entered a summary judgment in favor of the consignee and Mr. Ayres, and the consignors appealed from that summary judgment. *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242 (Wyo.1993). This Court determined that the summary judgment was improper because the risk-of-loss provision in the parties' consignment agreement was ambiguous. We reversed and remanded the case, stating that a genuine issue of material fact existed as to the parties' intent with regard to the risk-of-loss provision. *Id.* at 1244–45.[1]

The district court held a bench trial on January 5, 1994. Before the consignors had finished presenting their case, the district court orally granted a judgment in favor of the consignee and Mr. Ayres. The consignee and Mr. Ayres submitted a proposed written judgment for the consignors' approval, but they refused to approve it. The consignors presented their own written judgment to the district court; however, the district court entered the judgment which the consignee and Mr. Ayres had drafted. The consignors took their appeal from that judgment.

## DISCUSSION

### A. Findings of Fact and Conclusions of Law

The consignors generally contend that the findings in the judgment were not supported by sufficient evidence and that the district court applied incorrect conclusions of law to its findings.

1. For a full review of the facts of this case, see *McNeiley*, 855 P.2d at 1242–43.

2. The consignors also present some vague arguments, contesting various comments which the district judge made during the trial. We are unable to discern what errors the consignors are asserting with these arguments. "It is not the

In accordance with W.R.C.P. 52(a), this Court will not set aside a district court's findings of fact unless the findings are clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). " 'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Stated alternatively: "[A] determination that a finding is against the great weight of the evidence means a finding will be set aside even if supported by substantial evidence." *Id. See also Samuel v. Zwerin*, 868 P.2d 265, 267 (Wyo.1994). We review a district court's conclusions of law *de novo* on appeal. *Hopper*, 861 P.2d at 538.

The consignors specifically contest findings three, four, and five.[2] Those findings stated:

3. At the time the consignment was entered into, Don Smith read it and understood its terms including the risk of loss provision. He understood that the risk of loss provision included risk of loss from theft.

4. The parties intended at the time the consignment agreement was entered into that the risk of loss provision placed the risk of loss from theft of the consigned item on the plaintiffs-consignors.

5. Charles Ayres was an agent of [the consignee] at the time the ring was stolen. As an agent, he was entitled to the protection of the risk of loss provision contained in the contract between his principal, [the consignee], and the [consignors].

The consignors argue that the district court misinterpreted the risk-of-loss provision in findings three and four. The risk-of-loss provision provided:

3. The Parties agree:

function of this court to frame a party's argument. This court has consistently refused to consider positions which are not supported by cogent argument or pertinent authority." *Campbell v. Department of Family Services*, 881 P.2d 1066, 1069 n. 2 (Wyo.1994) (citations omitted).

. . . .

b. Risk of Loss. Risk of loss from damage to or destruction of the consigned merchandise from any cause whatsoever from the time of receiving possession of same until the sale and delivery to a customer of the Consignee or until returned to the Consignor[s] shall remain with the Consignor[s], and [the] Consignor[s] shall make such arrangements for insurance as [they] shall deem appropriate.

■ The parties to a contract may agree that one party will assume the risk of loss of property during the term of the contract. *See Berger v. Teton Shadows Incorporated,* 820 P.2d 176, 178 (Wyo.1991). A contractual provision which shifts the risk of loss of property may effectively absolve one party from any liability which may be associated with the loss of that property even when the loss results from that party's negligence. *Id.* *See also Northwinds of Wyoming, Inc. v. Phillips Petroleum Company,* 779 P.2d 753, 758 (Wyo.1989) (indemnity contracts).

■ Because the consignment agreement was ambiguous with regard to how the risk of loss would be allocated, the district court, as the finder of fact, was charged with determining the parties' intentions from the evidence presented at trial. *McNeiley,* 855 P.2d at 1244–45. In order to establish the parties' intent, Mr. Ayres's attorney had Mr. Smith assist him at trial in reading portions of Mr. Smith's deposition into the record:

Q I am going to ask you to turn to page 53 [of Mr. Smith's deposition], I am going to start on line 17 and I will ask the question and then when we get to the response, that is your response, I would like you to read that, if you would, please. Question: It speaks about risk of loss there. I want you to tell me what you understand that language to mean.

A What I understand that to mean?

Q Uh-huh.

A My understanding of that, as I look at it, would have been if someone had broken into the store and robbed the store, that my stuff along with everybody else's would be gone.

Q Thank you. It is also your understanding that provision was in the event of robbery or something like that, such as a theft, your sister's ring wouldn't be covered by insurance, isn't that true?

A No, I just said it would be gone, theft never entered my mind of [the consignee].

Q Turn to page 76 of the deposition, please.

A Okay.

Q I would like to read lines 1 through 6.

A Okay.

Q What I believe was when [the consignee] asked me to get insurance on that ring, that it was for—in case of a break-in or a robbery, or something like that, they would not—that my ring might not be listed with the rest of the stuff, or Cheri's ring. Now, even though that consignment agreement and again I would ask you to take a look at the specific provision there, risk of loss, it doesn't say theft or robbery, does it?

A No, it doesn't.

Both consignors admitted that they thought they needed to insure the ring while it was under consignment to the consignee. The appraisal document which the consignee had prepared for the ring stated: "Our firm has appraised the [ring], belonging to [Mr. Smith], for Insurance purposes." All the evidence, when considered as a whole, reveals that the parties intended for the consignors to assume the risk of loss in the event that the ring was stolen and that the district court's findings were not clearly erroneous.

■ The consignors do not argue that the district court was incorrect when it determined in finding five that Mr. Ayres was acting as the consignee's agent; however, they do assert that the risk-of-loss provision did not absolve Mr. Ayres from being individually liable for the loss of the ring.

■ Mr. Ayres admits in his brief that "in most circumstances [agents] may be sued for [their] own negligent acts." *See* RESTATEMENT (SECOND) OF AGENCY § 343 (1958).

Agents, however, may be protected by agreements which effectively shift the risk of loss away from their principals. *See Mayfair Fabrics v. Henley,* 101 N.J.Super. 363, 244 A.2d 344, 347 (Ct.Law Div.1968). An agreement may protect agents even though the agents are not expressly named as beneficiaries of the agreement. 244 A.2d at 351. *See also Boyce v. West,* 71 Wash.App. 657, 862 P.2d 592, 595–96 (1993), and Restatement, *supra.* The district court did not err in holding that, since Mr. Ayres was acting as the consignee's agent, he was protected from liability by the risk-of-loss provision.

## B. *Judgment on Partial Findings*

█ The consignors allege that their constitutional right to have due process was violated when the district court granted judgment against them before they had finished presenting their case. They argue that they were not afforded a meaningful opportunity to be heard by the district court.

A party is entitled to be accorded due process of law pursuant to the Fifth Amendment and the Fourteenth Amendment, Section 1 of the United States Constitution and Article 1, Section 6 of the Wyoming Constitution. This Court articulated the constitutional principles concerning procedural due process in *Amoco Production Company v. Wyoming State Board of Equalization,* 882 P.2d 866 (Wyo.1994):

> "Our cases hold that procedural due process is satisfied if a person is afforded adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner. In *White v. Board of Trustees of Western Wyoming Community College,* 648 P.2d 528 (Wyo.1982), *cert. denied* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983), we summarize the constitutional principles that are demanded by the Constitution of the United States and prescribe that, where a state seeks to terminate a life, liberty, or property interest, the state must afford notice and an opportunity for hearing, appropriate to the case, before termination."

882 P.2d at 872 (quoting *Robbins v. South Cheyenne Water and Sewage District,* 792

P.2d 1380, 1385 (Wyo.1990) (citation omitted)).

The consignors' due process rights were not violated in this case. W.R.C.P. 52(c) provided authority for the district court's actions:

> (c) *Judgment on partial findings.*—If during a trial without a jury a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. The party against whom entry of such a judgment is considered shall be entitled to no special inference as a consequence of such consideration, and the court may weigh the evidence and resolve conflicts. Such a judgment shall be supported by findings as provided in subdivision (a) of this rule.

This Court ruled in the first appeal in this case that the risk-of-loss provision of the consignment agreement was ambiguous and directed the district court to determine "how the parties intended to allocate the risk of loss." *McNeiley,* 855 P.2d at 1245. At trial, the consignors presented several witnesses. Near the conclusion of the time which had been allocated for the trial, the district judge interrupted the consignors' case and stated:

> THE COURT: Let me interrupt you a moment here. We have been here three hours and I still don't understand how the [consignee and Mr. Ayres] could be held liable on this case. Let me tell you why I think that ...[.] [T]he Supreme Court said some ambiguity [exists] in the consignment agreement concerning risk of loss that leads us to determine the intentions of the parties who entered in that agreement. All the evidence indicates the intention was the [consignors] undertook to do that, [the consignee] gave them the appraisal for insurance purposes, there is no other evidence to show any other intention. So I don't see how we can conclude

anything but the risk of loss was upon the [consignors]....

....

THE COURT: Well, the Supreme Court said it was ambiguous with respect to theft, so you have to go back to the intentions of the parties, and it seems to me the intentions, all risk of loss including theft, were to rest upon the [consignors]. That is why they were to get insurance[.] That was why they were given the insurance appraisal. So, I think, on the basis of the evidence that we have there, that the [consignee and Mr. Ayres] cannot be held liable, so I will sign a judgment to that effect. If you prepare one.

[THE CONSIGNORS' ATTORNEY]: Even though we are not finished presenting our case?

THE COURT: Do you have something else to present resolving those?

[THE CONSIGNORS' ATTORNEY]: I am not saying I am finished with the examination of Mr. Ayres, not finished with presenting evidence of Carol Thatcher, during this time period, to show the only person there, the only way that Kelly Ayres was in there, showing again evidence of the standard, Fred Bruhner, who is going to testify to the fact this insurance cannot be obtained by anyone other than [the consignee] because they are the ones who are in possession of it. So we have that evidence to present, and again we feel that we have met the burden of going forward, I mean they have established the standard, this is what they do in their store and they didn't follow those policies, but if you are going to, I guess, dismiss us right now, I guess that is your prerogative.

Although the consignors indicated that they had more evidence to present concerning other aspects of the case, they did ·not state that they had any further evidence to present regarding the parties' intentions with reference to the risk-of-loss provision, nor did they make an appropriate offer of proof. The district court had, therefore, fully heard the consignors on that issue. W.R.C.P. 52(c). The issue regarding the parties' intentions as to the risk-of-loss provision was dispositive. The consignors were given all the process they were due. The district court did not violate the consignors' due process right when it granted a judgment to the consignee and Mr. Ayres without allowing the consignors to finish presenting their case.

## C. *Change of District Judge*

In their final issue, the consignors ask this Court to order a change of the district judge if the case is remanded. Because we are affirming the district court's decision, we have no reason to address this issue.

## D. *Real Party in Interest*

■ Mr. Ayres maintains that the district court could have adopted a different rationale to decide this case. He contends that the district court did not have jurisdiction over the case because neither consignor was a real party in interest.

"The requirement of a real party in interest is jurisdictional and, as such, it can be raised at any time and by any entity." *Mari v. Rawlins National Bank of Rawlins,* 794 P.2d 85, 88 (Wyo.1990).

The definition of real party in interest is derived from *Weber [v. City of Cheyenne,* 55 Wyo. 202], 97 P.2d [667,] 669 [ (1940) ] (quoting 47 C.J. 35 ...):

"A 'real party in interest' is one who has an actual and substantial interest in the. subject matter, as distinguished from one who has only a nominal interest, having reference not merely to the name in which the action was brought, but to the facts as they appear of record."

*Richardson Associates v. Lincoln–DeVore, Inc.,* 806 P.2d 790, 797 (Wyo.1991). *See also State Department of Family Services, Division of Public Assistance and Social Services ex rel. BJC v. DDM,* 877 P.2d 259, 261 (Wyo.1994).

The trial testimony revealed that neither consignor claimed full ownership of the ring. Ms. McNeiley was holding the ring as collateral for a loan which she had made to her brother, who was not a party in the case. The brother apparently defaulted on the loan, and Ms. McNeiley intended to sell the ring to cover her losses. Mr. Smith signed

the consignment agreement on behalf of Ms. McNeiley.

Ms. McNeiley was a real party in interest in the case. She had an actual and substantial interest in the subject matter because, at the very least, she held a security interest in the ring. *See South Omaha Production Credit Association v. Tyson's, Inc.*, 189 Neb. 702, 204 N.W.2d 806, 808 (1973); *see also Frantz v. First National Bank & Trust Company of Wyoming*, 687 P.2d 1159 (Wyo. 1984) (secured creditor sued purchaser of debtors' property). Mr. Smith also had capacity to sue in this matter since he entered into the consignment agreement on behalf of Ms. McNeiley. W.R.C.P. 17(a).[3] *See also Sarchet v. Roach*, 62 Wyo. 97, 106–07, 163 P.2d 185 (1945). The district court, therefore, had jurisdiction.

## CONCLUSION

We hold that the district court did not err in granting a judgment in favor of the consignee and Mr. Ayres.

Affirmed.

---

**3.** W.R.C.P. 17(a) provides in pertinent part:
An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. . . .