15559

PARKER v. BISSONETTE
(2 cases)

(26 S. E. (2d), 497)

156

February, 1943.

*Messrs. Adams, Douglas & Brennan,* of Savannah, Ga., and *Mr. Augustine T. Smythe,* of Charleston, S. C., Counsel. for Appellants,

*Messrs. Moore & Mouzon* and *Mr. John I. Cosgrove,* all of Charleston, S. C., Counsel for Respondent,

July 8, 1943.

CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, delivered the unanimous opinion of the Court:

Mrs. Annie Eliza Parker, the appellant in one of the cases before us, was a passenger on a train of the Atlantic Coast Line Railroad Company, traveling from Savannah to Charleston. She was riding on a pass which contained this provision: "The person accepting this free ticket agrees that the Atlantic Coast Line Railroad Company shall not be liable under any circumstances, whether of negligence of agent or otherwise, for any injury to the person, or for any loss or damage to the property, of the passenger using the same."

The through trains of this railroad company do not run down to the Union Station in Charleston, but passengers going to Charleston get off at the North Station, several miles outside of the city, From that point they are conveyed to the Union Station in a bus operated by E. A. Bissonette, the respondent, who transports them from one station to the other for and on behalf of the railroad company, pursuant to a written contract between himself and the company.

While Mrs. Parker was being transported on her pass from the North Station to the Union Station the respondent's bus was in a collision with another motor vehicle, and this action was brought by her against Bissonette for damages for personal injuries, which she alleges were sustained by her through the negligence and willfulness of the defendant.

To this complaint the respondent filed an amended answer and in one of his defenses alleged that by reason of the provisions and limitations of the pass for free interstate trans-

portation no actionable claim for alleged injuries suffered by Mrs. Parker while a passenger on the bus is maintain-able against the defendant.

The plaintiff demurred to that defense in the answer on the ground, among others, that the stipulation in the pass is applicable only to the Atlantic Coast Line Railroad Company and is not effective as a defense for any other person.

The demurrer was heard by his Honor, Judge M. M. Mann, who filed an order holding that the stipulation in the pass was not a defense as to willful or wanton conduct on the part of the defendant; but as to negligence he overruled the plaintiff's demurrer, holding that there existed such a unity and identity between the railroad company and those sharing the responsibility of the carriage of Mrs. Parker, as would make them the beneficiaries of the limitation of liability contained in the pass.

The question of willfulness of the defendant is in no way involved in this appeal. It relates only to negligence. See generally, *Turman v. Seaboard Air Line Railway Company,* 105 S. C., 287, 89 S. E., 655.

Under the view taken by the Circuit Judge that the stipulation in the pass was for the benefit of all persons and agencies engaged in the transportation of the plaintiff, he did not find it necessary to determine whether the relationship between the railway company and Bissonette under the contract was that of master and servant, principal and agent, or independent contractor. However, since all of the parties to this appeal insist that in so far as it affects the rights of Mrs. Parker, a passenger, the relationship between the railroad company and Mr. Bissonette was that of principal and agent, or master and servant, we shall consider the case, first, from that viewpoint, and shall then consider other relationships.

Does the stipulation in the pass relieve only the railroad company from liability, for negligence, or does it also relieve a servant of the company from his personal or individual liability?

It is well settled that, in the absence of a contract otherwise providing, a railroad company is responsible in damages for injuries caused by its negligence to one who is being transported gratuitously. 13 C. J. S., Carriers, § 549, pp. 1053, 1054.

It is also clear that, in so far as it involves an interstate journey, the Congress has taken over the entire field as to free passes under the statute known as the Hepburn Act, 49 U. S. C. A. § 1(7), and under the controlling decisions of the Supreme Court of the United States a railroad company can make a valid contract with a person traveling from one state to another on a free pass, exempting it from liability for its negligence. *Kansas City Southern Railroad Company v. Van Zant*, 260 U. S., 459, 43 S Ct., 176, 67 L. Ed., 348.

As a consequence, so far as interstate travel is concerned, all State laws both constitutional and statutory are superseded, including Art. 9, Section 3, of our Constitution, which makes it unlawful for a railroad company to make any contract relieving it of its common-law liability or limiting the same in reference to the carriage of passengers.

It is our opinion that the stipulation in the pass refers to the Atlantic Coast Line Railroad Company alone. That is its specific language. It definitely says that the person accepting the free ticket agrees "that the Atlantic Coast Line Railroad Company shall not be liable." There is nothing in the stipulation to show that it was intended to be for the benefit of the agents or servants of the railroad company with respect to their personal liability. If that had been the intention it could have been provided for by the addition of a very few words. The defendant contends that the language in the pass means more than it actually says, and that it was intended not only that the railroad company should be free of liability, but that any agencies or instrumentalities used for the transportation of the passenger should also be protected. The contract does not so

provide, and the Court should not attempt to re-write the agreement and incorporate in it provisions which were not intended by the parties. While it is true that a contract may be made for the benefit of a third person, who may assert his rights thereunder, there is nothing to show that it was the intention of the parties that the stipulation here should be for the benefit of any one else, or that it should affect any one besides the two contracting parties, Mrs. Parker and the railroad company. 17 C. J. S., Contracts, § 519, subsec. c, pp. 1127, 1129.

We think that the language in the pass is applicable only to the Atlantic Coast Line Railroad Company, and is not a defense for an agent of the company. The pass, indeed, uses the words "negligence of agents," but the statement is that the company shall not be liable under any circumstances, whether of negligence of agents or otherwise." The reference is solely to the liability of the company. It does not say that the agents, as individuals, shall not be liable.

It seems that this question has not heretofore arisen in South Carolina, and there are very few authorities elsewhere. This is no doubt caused by the fact that a plaintiff ordinarily brings his action against the railroad company or other master, sometimes joining the servant. It seldom occurs that the agent or servant is sued alone. It so happens in this case that S. L. Parker, the plaintiff's husband, is an employee of the Atlantic Coast Line Railroad Company, and apparently did not desire to enter a suit against his employer.

It seems that the only case at all similar to the present one is the New York case of *Wilder v. Pennsylvania Railroad Company et al.,* 245 N. Y., 36, 156 N. E., 88, 52 A. L. R., 188. There the plaintiff was a passenger from New York City to Norfolk, Virginia, and had a pass which provided: "In consideration of the issuance of this free pass, I hereby assume all risks of personal injuries and all loss of or damage to property from whatever causes arising, and release the company from liability therefor."

She entered the railroad station on 7th Avenue in New York City, known as the Pennsylvania Station. This station was owned by the Pennsylvania Tunnel & Terminal Railroad Company, and she fell on a slippery floor of the waiting room. Her action was against both the terminal company and the railroad company, and it was held by the Court that the agreement relieved of liability the company owning and operating the station, and that it shared the benefits of the pass.

That case, we think, is different from the present one in several respects. The passes are quite different. In the present case the passenger agreed that the railroad company should not be liable; in the New York case the passenger assumed all risks of injury. Mrs. Parker did not expressly assume all risks of the journey from Savannah to the Union Station in Charleston, but limited herself to agreeing that only the Atlantic Coast Line Company should be without liability. Furthermore, in the *Wilder case* the Court held that the Terminal Company was a connecting carrier of the Pennsylvania Railroad Company, and laid great stress upon that fact in reaching its decision. In the instant case Mr. Bissonette was in no sense a connecting carrier, and the Circuit Judge so held in his order. The contract annexed to the answer here and admitted by the demurrer, states that it was the railroad company which had obtained from the Interstate Commerce Commission authority to operate as a common carrier by motor vehicle in the interstate transportation of passengers between the North Station and the Union Station. Also, the pass in the New York case is entitled "Pennsylvania System" not "Pennsylvania Railroad," and the Court said that the station in Manhattan, New York City, is part of the Pennsylvania System, and that it apparently was the intention of the parties to include the station and its owner, part of the Pennsylvania System, within the privileges of the agreement.

It is not contended that Bissonette was relieved of liability by reason of a release by Mrs. Parker of his joint tort-feasor. The pass was not a release of an existing cause of action; it was in the nature of an agreement not to sue. It referred only to the future, and was given at a time when there was no existing liability which could be released. 53 C. J., 1263.

The defendant says that there is such a unity and legal identity between the railroad company as master and Bissonette as servant, that the defendant is entitled to share in the benefits conferred by the contract, and he cites the case of *Schumpert v. Southern Railway Company*, 65 S. C., 332, 43 S. E., 813, 95 Am. St. Rep., 802. It is true that the identification of the master and servant is such that a joint action may be maintained against them, even though the liability of the master rests upon the principle of respondeat superior. Yet, since either may be sued separately, and plaintiff followed that course, the agreement of Mrs. Parker not to sue the railroad company in no way affected the liability of Mr. Bissonette. Even if both master and servant could have been sued here the respondent would have no right to call upon the railroad company for contribution or indemnity, the fault being alleged to be his alone. It cannot be said that the discharge of the railroad from liability operated to his prejudice. We do not think that it follows merely because he is a servant, to the benefits conferred upon the master by the contract.

We have so far considered the case on the theory urged by the parties, that Bissonette was a servant or agent of the railroad company under the contract. However, since the Circuit Judge made no holding as to what the relationship was, we shall consider the question from the standpoint of other relationships also. In doing so it seems clear that since we have held that the stipulation in the pass applied to the railroad company alone, and was not intended to be for the benefit even of an agent or servant,

all the more it would not be for the benefit of an independent contractor, or other person more remote than an agent.

We conclude, then, that his Honor, the Circuit Judge, was in error in holding that the stipulation in the pass relieved the defendant Bissonette from liability for his own alleged negligence, and think that he should have sustained the plaintiff's demurrer as to negligence, as he did with reference to willfulness.

What has been said about Mrs. Parker's case will dispose also of the appeal in the other case, that of S. L. Parker against the respondent Bissonette.

His action was brought for hospital and medical expenses and for the loss of the consortium of his wife, resulting from her injuries. His demurrer to the defense in the respondent's amended answer was the same as that in the case of Mrs. Parker, except that it contained the additional grounds that he was not a party to the stipulation contained in the pass and is not bound by it; and that the elements of danger claimed by him were not within the purview of the language in the pass. The Circuit Judge held that the plaintiff was not entitled to consequential damages for injuries to his wife unless she had a right of action against the defendant, and so he overruled the demurrer to the defense set up in the answer.

It having been held, however, that Mrs. Parker is not barred by reason of the stipulation in the pass, from a suit against Bissonette for injuries caused by his alleged negligence or willfulness, it follows that the claim of her husband would not be barred either.

Accordingly, the orders of the Circuit Court overruling the plaintiffs' demurrers with respect to negligence are reversed in both cases. This will have the effect of eliminating altogether the "further defense" contained in Paragraphs Four, Five, and Six of the two amended answers; and the causes are remanded to the Circuit Court for further proceedings.

Reversed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES, and CIRCUIT JUDGE T. S. SEASE, ACTING ASSOCIATE JUSTICE, concur.