Taft, J.
This court has never definitely passed upon the validity of provisions in a pass exempting a common carrier from liability for negligence to a “gratuitous” passenger. See Knowlton v. Erie Ry. Co., 19 Ohio St., 260, 2 Am. Rep., 395, inferentially indicating the invalidity of such provisions. See also Cleveland, Painesville & Ashtabula Rd. Co. v. Curran, 19 Ohio *352 St., 1, 2 Am. Rep., 362, holding one riding on “drover pass” a paying passenger, and Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney, 95 Ohio St., 64, 115 N. E., 505, L. R. A. 1917D, 641, Ann. Cas. 1918B, 286, holding snch provisions invalid as to rights against railroad of employee of Pullman Company.
However, the Supreme Court of the United States has held that, by reason of what is referred to as the Hepburn Act (Section 1 (7), Title 49, U. S. Code) and notwithstanding Erie Rd. Co. v. Tompkins, 304 U. S., 64, 82 L. Ed., 1188, 58 S. Ct., 817, 114 A. L. R., 1487, the validity and effect of any provisions with respect to liability in a free pass for interstate railroad transportation must be determined by federal rather than any state law. Francis v. Southern Pacific Co. (1948), 333 U. S., 445, 92 L. Ed., 798, 68 S. Ct., 611.
Provisions in free passes similar to the “conditions” set forth in the pass in the instant case were sustained as defenses in actions for negligently causing personal injuries or death in the Francis case and in Northern Pacific Ry. Co. v. Adams (1904), 192 U. S., 440, 48 L. Ed., 513, 24 S. Ct., 408, Boering v. Chesapeake Beach Ry. Co. (1904), 193 U. S., 442, 48 L. Ed., 742, 24 S. Ct., 515, and Kansas City Southern Ry. Co. v. Van Zant (1923), 260 U. S., 459, 67 L. Ed., 348, 43 S. Ct., 176, 22 NCCA, 896.
Charleston & Western Carolina Ry. Co. v. Thompson (1914), 234 U. S., 576, 58 L. Ed., 1476, 34 S. Ct., 964, specifically ruled against a contention “that a so-called free pass * * * issued to [an employee or] a member of an employee’s family really was not a free pass but was issued upon consideration of the services of the employee.” Although it is difficult to reconcile that decision and the reasons stated therefor in the opinion with the holding in Martin v. Greyhound Corp. (CCA6-1955), 227 F. (2d), 501, 55 A. L. R. (2d), 761, the plaintiff in the instant case, unlike the plaintiff in the Martin case, has not relied upon any contractual provisions requiring the issuance to her of the pass that she was using. It may be that the Supreme Court denied certiorari (see 350 U. S., 1013, 100 L. Ed., 873, 76 S. Ct., 657) in the Martin case because it involved, as the opinion therein indicates, a summary judgment for the defendant on a complaint presenting “an issue of wilful, wanton, or gross negligence” *353 and “a carrier cannot by such stipulations [even in a free pass] relieve itself from liability for acts done wantonly or wilfully, or for acts of gross negligence, New York Central Ry. Co. v. Mohney, 252 U. S., 152, 40 S. Ct., 287, 64 L. Ed., 502.” In the instant case, there is no allegation of any such misconduct as a cause of plaintiff’s injuries.
Plaintiff contends that, since the “conditions” relied upon by the terminal company refer to “the company” as not to be liable and to “the company” as not to be considered “as a common carrier, or liable * * * as such” and since the only possible “company” mentioned in the pass is the “New York Central System” and the terminal company is not named in the pass, those conditions should not be construed so as to exempt the terminal company from liability on account of injuries to the plaintiff caused by negligence of the terminal company.
In our opinion, that contention is irreconcilable with the decision and the reasons advanced therefor in Wilder v. Pennsylvania Rd. Co. (1927), 245 N. Y., 36, 156 N. E., 88, 52 A. L. R., 188. In that case, the free pass Avas for a trip from New York City to Washington, D. C. or Norfolk, Virginia and purported to be issued by the “Pennsylvania System” and provided, so far as pertinent, that, ‘ ‘ in consideration of the issuance * * *, I hereby assume all risks of personal injuries * * * from whatever causes arising and release the company from liability therefor.” The plaintiff in that case “fell on a soapy and slippery floor of the waiting room of the Pennsylvania station, OAvned by the defendant Pennsylvania Tunnel and Terminal Railroad Company” when “on the premises for the purpose of boarding a” Pennsylvania Railroad train on a trip to Norfolk on that pass. In holding that the foregoing-quoted provisions gave the OAvner of the station a valid defense, it is said in the opinion by Crane, J.:
‘ ‘ The meaning and purport of this agreement was that, because of the free use of facilities, the plaintiff assumed all risks of injury while using the pass between New York and Norfolk, Virginia. Impliedly, the agreement included not only the facilities of the Pennsylvania Railroad Company, but of the connecting lines. It had the same effect as if the Pennsylvania Railroad owned the station and operated a railroad to the plaintiff’s des *354 tination. The contract was a single contract to travel all the way, and afforded protection to all the lines contributing to that end.
a # # *
“ * * * her pass entitled her to the use of the Pennsylvania Railroad depot, its waiting rooms and the passage through its gates to the trains. The station and the waiting room were part of the connecting railroad which the plaintiff could use free of charge by reason of her agreement with the Pennsylvania Railroad Company. * * * "While using this pass, therefore, she assumed all risks of personal injury. This assumption or agreement relieved the company owning and operating the station of liability. By fair implication, if not by express words, it shared the benefits as well as the responsibilities of the pass. In making the contract, the Pennsylvania Railroad was the agent of these connecting lines.”
In Brown v. Terminal Bd. Assn. (Mo.-1957), 298 S. W. (2d), 471, the pass involved provided that no one “shall have any right or claim against the issuing company, its * * * agents, or any company or railway on whose lines or trains his pass may he honored, or its * * * agents.” The emphasized words would quite clearly include any station owner at either end of the journey. Hence, that case, which is relied upon by the terminal company, is distinguishable from the instant case.
Plaintiff argues that, in interpreting the language of the pass involved in the instant ease, the lower courts disregarded the general principle “that a contract is to be interpreted most liberally in favor of the contracting party who had no part * * * in selecting or preparing the language of the contract.” That no such principle requires a liberal interpretation of the “conditions” in this pass in favor of plaintiff is apparent from the following statements by Brewer, J., in the opinion of Boering v. Chesapeake-Beach Ry. Co., supra (193 U. S., 442), 449:
“* * * it is insisted that the exemption from liability for negligence results only from a contract therefor; that there can be no contract without knowledge of the terms thereof and assent thereto, and that she had neither knowledge of the stipulation nor assented to its terms; that therefore there was no contract between her and the company exempting it from liability *355 for negligence. * * * when a contract for carriage and shipment is shown * * * it is fitting that any claim of limitation of the ordinary liabilities arising from such a contract should not be recognized unless both parties to the contract assent, and that assent is not to be presumed, but must be proved. [Cf. Agricultural Ins. Co. v. Constantine (1944), 144 Ohio St., 275, 58 N. E. (2d), 658.] Here there was no contract of carriage, and that fact Avas known to Mrs. Boering. She was simply given permission to ride in the coaches of the defendant. Accepting this privilege, she was bound to know the conditions thereof. * * * A carrier is not bound, any more than any other owner of property who grants a privilege, to hunt the party to whom the privilege is given, and see that all the conditions attached to it are made known. The duty rests rather upon the one receiving the privilege to ascertain those conditions. ’ ’
In further support of her contention, that the “conditions” on the pass involved in the instant case should not be construed so as to provide a defense for the terminal company, plaintiff cites Parker v. Bissonette, 203 S. C., 155, 26 S. E. (2d), 497, 147 A. L. R., 773. That decision and some of the reasons given in support of it are difficult to reconcile with the decisions and reasons given therefor not only in the Wilder case but also in Hall v. North Eastern Ry. Co. (1875), L. R., 10 Q. B., 437, and Bicknell v. Grand Trunk Ry. Co. (Ontario-1899), 26 A. R., 431. However, even if we assume that the Parker case was correctly decided, the reasons given by the South Carolina court in deciding it will not support a construction of. the pass in the instant case that might enable plaintiff to recover from the terminal company.
In the Parker case, recovery was sought by a plaintiff riding on a free pass issued by the Atlantic Coast Line Railroad Company for a trip to Charleston against a bus operator who transported passengers for that railroad from a station outside that city to its union station. Such transportation was necessary because that railroad’s through trains did not run to the union station. As a defense, the bus operator set up the following provision of the pass:
“The person accepting this free ticket agrees that the Atlantic Coast Line Railroad Company shall not be liable under *356 any circumstances, -whether of negligence of agent or otherwise, for any injury to the person, or for any loss or damage to the property, of the passenger using the same.”
In the opinion by Henderson, J., it is said:
“ * * * the stipulation in the pass * * * definitely says that the person accepting the free ticket agrees ‘that the Atlantic Coast Line Railroad Company shall not be liable’ * * * there is nothing to show that it was the intention of the parties that the stipulation here should be for the benefit of anyone else * *
In distinguishing the Wilder case, it is said:
“* * * The passes are quite different.
“In the present case the passenger agreed that the railroad company should not be liable; in the New York case the passenger- assumed all risks of injury. Mrs. Parker did not expressly assume all risks of the journey from Savannah to the union station in Charleston, but limited herself to agreeing that only the Atlantic Coast Line Company should be without liability. * * * Also, the pass in the New York case is entitled ‘Pennsylvania System’ not ‘Pennsylvania Railroad,’ and the court said that the station * * * is part of the Pennsylvania System, and that it apparently was the intention of the parties to include the station and its owner, part of the Pennsylvania System, within the privileges of the agreement.”
In the instant case, the plaintiff also “assumes all risk of accidents.” Furthermore, the pass is entitled “New York Central System.” The only way that a New York Central train discharges passengers in Cleveland is through the Cleveland Union Terminal. That terminal would therefore appear to be an essential part of the New York Central System into Cleveland. In the instant case, the release is not, as in the Parker case, to any specifically named railroad. It is to “the company,” as it was in the Wilder case, and there is nothing in the pass to indicate that only one company of the numerous companies that are a part of the New York Central System was to be described by the words “the company.” If only one company was to be described, which one would it be? In our opinion, the words “the company” in this pass certainly describe a company (such as the terminal company) that owns common carrier facilities, while such company is furnishing such facili *357 ties and services with respect thereto, which facilities and services are a part of the common carrier facilities and services being provided under the pass by the so-called New York Central System. In furnishing such facilities and services, a company such as the terminal company does so as an integral part of the New York Central System.
Plaintiff further relies upon Robert C. Herd & Co., Inc., v. Krawill Machinery Corp. (1959), 359 U. S., 297, 3 L. Ed. (2d), 820, 79 S. Ct., 766, holding that a provision in a bill of lading limiting “carrier’s liability” did not “indicate that the contracting parties intended to limit the liability of * * * agents of the carrier” because “contracts purporting to grant immunity from * * * liability must be strictly construed and limited to intended beneficiaries” and “not applied” to relieve a tort-feasor from liability for negligence “unless the clarity of the language used expresses such * * * understanding of the contracting parties.” If we assume that such a rule of strict construction should be applied in construing the “conditions” involved in the instant case (but see the language hereinbefore quoted from Boering v. Chesapeake Beach Ry. Co., supra [193 U. S., 442] indicating it should not), we are of the opinion that the language of this pass clearly expresses an intention that a company, such as the terminal company, is to be immune from liability based on negligence for injuries received by the user of such pass while accepting thereunder the common carrier facilities of such company and its services with respect thereto as a part of the common carrier facilities and services to be provided under such pass by the New York Central System. While so furnishing its facilities and services with respect thereto, the terminal company was not merely an agent of the so-called New York Central System but was an integral and essential part of that system, and would be described by the words “the company” found in the pass.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias, Bell, Herbert and Peck, JJ., concur.