520 S.E.2d 620

**Elbert MOSTELLER, Appellant,**

v.

**COUNTY OF LEXINGTON and S.C. Department
of Transportation, Respondents.**

No. 24992.

Supreme Court of South Carolina.

Heard June 10, 1999.
Decided Aug. 23, 1999.

Shane E. Swanson, of Mt. Pleasant, for appellant.

Jeffrey M. Anderson and Lisa L. Smith, both of Nicholson, David, Frawley, Anderson & Ayer, LLP, of Lexington, for respondents.

TOAL, Justice:

This case involves a challenge by a property owner to the closure of a railroad crossing in Lexington County. Summary judgment was granted for the defendants. The plaintiff appeals to this Court. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

In February 1995, the South Carolina Department of Transportation ("SCDOT") closed the railroad crossing on White Owl Road in Chapin, South Carolina pursuant to S.C.Code Ann. § 58–15–1625 (Supp.1998). Elbert Mosteller ("Plaintiff"), a nearby property owner, sued Lexington County and SCDOT for closing the crossing. White Owl Road was one of several roads that connected U.S. Highway 76 to Harvestview Road. Plaintiff's property sits on Harvestview Road directly across from where White Owl Road meets Harvestview.[1] To reach White Owl Road, Plaintiff must cross over Harvestview Road. In fact, for his own convenience, Plaintiff constructed his driveway so that it faces into White Owl Road. Plaintiff frequently used White Owl Road to reach Highway 76. In addition to White Owl Road, Plaintiff can access Highway 76 by traveling to other roads located in either direction on

---

1. Plaintiff's address is 245 Harvestview Road.

Harvestview Road. These roads are approximately one-half a mile from Plaintiff's residence.

In his *pro se* complaint, Plaintiff alleged causes of action for temporary and permanent injunction, deprivation of substantive due process, unconstitutional taking, and arbitrary and capricious action. Plaintiff claimed that he should have been given notice of the closing pursuant to S.C.Code Ann. § 57–9–10 (1991). He further claimed that the closing of White Owl Road constituted a taking and resulted in the depreciation of his property value.

On July 2, 1998, Defendants moved for summary judgment, and on September 14, 1998, the trial court heard arguments on the motion. By order dated September 28, 1998, the trial court granted Defendants' summary judgment motion. The trial court held that White Owl Road had not been closed. Plaintiff appeals to this Court, raising the following issues:

(1) Did the trial court err in concluding that White Owl Road had not been closed where conflicting evidence was presented?

(2) Did the trial court err in deciding that Plaintiff was not entitled to notice of the closure?

(3) Did Plaintiff make a prima facie showing of a constitutional taking?

### SCOPE OF REVIEW

Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Café Assoc., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Middleborough Horizontal Regime Council of Co–Owners v. Montedison,* 320 S.C. 470, 465 S.E.2d 765 (Ct.App. 1995).

### LAW/ANALYSIS

Plaintiff first argues that he was entitled to notice of the closing under S.C.Code § 57–9–10 (1991). We disagree.

Section 57–9–10 provides:

Any interested person, the State or any of its political subdivisions or agencies may petition a court of competent jurisdiction to abandon or close any street, road or highway whether opened or not. Prior to filing the petition, notice of intention to file shall be published once a week for three consecutive weeks in a newspaper published in the county where such street, road or highway is situated. Notice shall also be sent by mail requiring a return receipt to the last known address of all abutting property owners whose property would be affected by any such change.

This section of the Code has remained unchanged since its enactment in 1962. In 1992, the General Assembly enacted S.C.Code Ann. § 58–15–1625 (Supp.1998), which states:

*Notwithstanding any other provision of law,* the Department of Transportation may order legally closed and abolished as a public way, within the limits of a railroad right-of-way, a grade crossing then in existence at the time the department assumes jurisdiction of the matter, upon a finding that the enhancement of public safety resulting from such closing outweighs any inconvenience caused by increased circuitry of highway routes. This order by the department may be issued either in connection with, or independent of, an order relating to automatic train-activated warning signals. The authority of the department legally to close and abolish grade crossings is in addition to authority granted by law to other state agencies or to local units of government to close and abolish grade crossings. Upon the issuance of the order by the department, the railroad or railroads involved shall physically remove the crossing from the tracks, and the governmental unit maintaining the highway shall remove or barricade the approaches to the crossing.

(Emphasis added). Under the authority of this section, the SCDOT closed the railroad crossing on White Owl Road in Lexington County. Plaintiff argues that closing the railroad crossing effectively closed White Owl Road and therefore triggered the notice provisions of section 57–9–10.

■■ When interpreting a statute, this Court's primary function is to ascertain the intention of the Legislature. *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373

(1994). When a statute is clear and unambiguous, the terms of the statute must be given their literal meaning. *Id.*

Section 57–9–10 requires two separate notice procedures—notice by newspaper published in the county where the road is located and notice by mail to abutting landowners. As a resident within the county, Plaintiff had standing to seek enforcement of the statute. However, the application of section 57–9–10 in this case must be considered in light of section 58–15–1625. The railroad closing statute does not require any notice prior to a grade crossing closing. The statute simply requires that the SCDOT issue an order closing the grade crossing within a railroad right-of-way upon finding that the enhancement of public safety would outweigh any inconvenience of increased circuitry of highway routes. Further, the statute is introduced with the phrase, "Notwithstanding any other provision of law. . . ." By using this language, the legislature clearly intended that section 58–15–1625 be exclusive of other provisions of law, including section 57–9–10. In effect, section 58–15–1625 trumps the notice requirements of section 57–9–10. *See Lewis v. Gaddy,* 254 S.C. 66, 173 S.E.2d 376 (1970) (holding that by using the phrase "notwithstanding any other provision of law" in section 4–29 of the 1967 Code, the legislative intent was to allow both the possession and consumption of alcoholic liquors upon the premises of a business establishment meeting the requirements of section 4–29, notwithstanding the provisions of section 4–95). Thus, since section 58–15–1625 contains no notice provision, the SCDOT is not statutorily required to provide notice prior to closing a railroad grade crossing.

■ Plaintiff next argues that he had a constitutionally protected right to access Highway 76 via White Owl Road. We disagree.

Plaintiff cites *South Carolina State Highway Dep't v. Allison,* 246 S.C. 389, 143 S.E.2d 800 (1965) for the proposition that an abutting property owner has a right of access over a street adjacent to his property, and that an obstruction that materially injures or deprives the abutting property owner of ingress or egress to and from his property is a taking for which recovery may be had. In applying *Allison* to the instant case, Plaintiff contends that he had a property right to

access Highway 76 from Harvestview Road via White Owl Road. The closing of White Owl Road impeded this right and decreased Plaintiff's property value as a result.

In *Allison*, U.S. Highway 29 was constructed over the western portion of the landowner's property. A condemnation proceeding had been instituted in connection with the acquisition of a right of way for Highway I–85, one lane of which was to be constructed on top of Highway 29. The landowner had access to Highway 29 along the entire western extremity of his property prior to the taking. After the taking, he would have identical access to a frontage road being constructed in conjunction with I–85. By traveling seven-tenths of a mile south of his property on this frontage road, the landowner could enter I–85. The landowner sued, arguing there was a compensable taking. This Court agreed, holding that the landowner was entitled to compensation for his loss of access to Highway 29. As noted by Plaintiff in this case, a critical fact in *Allison* was that the affected road abutted the plaintiff's property. The Court in *Allison* observed that the fee to the right of way of most roads in this state remained in the abutting landowners. It was the loss of this right that the Court held was compensable.

" 'Abut' means to be contiguous, or border on; to bound upon; to end, end at, or terminate, to join at a border or boundary; to meet; to touch at the end or side." 1 C.J.S. at 397 (1985). However, "abut" does not always mean there must be actual contact. *See id.* For example, property may still be deemed to abut a road when there is some intervening, natural barrier like a stream or river. *See Anderson v. Town of Albemarle*, 182 N.C. 434, 109 S.E. 262 (1921). However, in this case, Plaintiff's property is separated from White Owl Road by Harvestview Road. Plaintiff may, in fact, use Harvestview Road to access Highway 76 at points north and south of White Owl Road. There is no part of Plaintiff's property that actually touches, or is separated by a natural barrier from, any section of White Owl Road. Thus, Plaintiff cannot suffer a constitutional taking by virtue of the closing of the railroad crossing on White Owl Road.[2]

---

**2.** That is not say that an abutting landowner would not have a constitutional claim as a result of such a closing. In *City of Rock Hill v.*

## Conclusion

Based on the foregoing, we **AFFIRM** the trial court.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.

*Cothran*, 209 S.C. 357, 40 S.E.2d 239 (1946), this Court held that the right of a landowner to recover damages because of the vacation of a street depends on the location of his land with reference to the part of the street vacated, and the effect of such vacation on his rights as an abutting owner. The Court stated that the test is not whether the property abuts the affected section of the road, but whether there is special injury. If the property does not abut on the part of the street vacated, the landowner must be specially injured as to be entitled to recover compensation on the ground that his access is cut off in one direction, but not in the opposite direction. In *Cothran*, the plaintiff's corner lot fronted on a street that was partially closed by City Council. The portion closed did not abut the plaintiff's property. The effect of the closing turned the street into a *cul de sac*. The Court found that the plaintiff had suffered a special injury. The Court further held that the fact the landowner had access to a street on another side of his property was one to be considered in estimating the damages to be awarded. *Cothran*, 209 S.C. at 368–71, 40 S.E.2d at 243–44. *Cothran* is distinguishable from the instant case because, in this case, the landowner's property does not abut any part of the affected road.