529 S.E.2d 743

**Gerald D. WADE, Jr., Appellant,**

v.

**BERKELEY COUNTY, South Carolina
and John Doe, Respondents.**

No. 3145.

Court of Appeals of South Carolina.

Heard Jan. 13, 2000.

Decided April 3, 2000.

Rehearing Denied May 27, 2000.

514

George J. Kefalos, of George J. Kefalos, P.A., of Charleston, for Appellant.

Stephen P. Groves, Joseph E. DaPore and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale; and Bonum S. Wilson, III, of Pratt–Thomas, Pearce, Epting & Walker, all of Charleston, for Respondents.

ANDERSON, Judge:

This case was heard en banc to determine the efficacy of a document entitled "Covenant Not To Execute Judgment" as juxtaposed to the South Carolina Tort Claims Act. In this negligence action, Gerald D. Wade, Jr., appeals from the trial court's order granting summary judgment to Berkeley County pursuant to the Tort Claims Act.[1] We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On the morning of June 1, 1995, Bobby Joe Pierce was driving his personal vehicle to his job as an animal control officer with Berkeley County. While on the way, Pierce stopped to determine if a dead dog on the side of the road was wearing a collar. The night before, Pierce received a phone call from a woman who informed him the dog had been run over and was dead. According to Pierce, after resuming his trip to work, he was forced to drive into the left hand lane to avoid a John Doe driver who suddenly stopped in front of him. Pierce's car collided head on with Wade's vehicle.

Wade filed a negligence action against Pierce and the John Doe driver. In the initial complaint, Wade made no allegation concerning Pierce's employment with the County. In his deposition, Pierce testified he stopped to check on the dead animal because that was his job and he considered himself on the job at the time. Subsequently, Pierce's personal liability insurance carrier paid Wade $ 13,000 in exchange for a Covenant Not to Execute Judgment. At the time of this payment, Wade had made no claim against Berkeley County.

Thereafter, Wade filed an amended complaint against Berkeley County, pursuant to the South Carolina Tort Claims

---

1. S.C.Code Ann. § 15–78–10, *et seq.* (Supp.1999).

Act, and John Doe as a result of the same accident. Pierce was not a named party in the amended complaint. Wade alleged Pierce was acting as an agent and servant of the County at the time of the accident. The County denied this allegation and averred as an affirmative defense the action was barred under S.C.Code Ann. § 15–78–70(d) (Supp.1999), which addresses the effect of a judgment or settlement. The County filed a motion for summary judgment[2] based upon this section.

In granting the motion, the trial court held Berkeley County was entitled to summary judgment as a matter of law "since there was a prior settlement of Wade's personal injury claims between Wade and an alleged tortfeasor—employee (i.e., Pierce) for the same occurrence." The court concluded "[t]his settlement constitutes a complete bar to any further action by Wade against the relevant governmental entity—employer (i.e., Berkeley County) pursuant to S.C.Code Ann. § 15–78–70(d)."

## ISSUES

I. Did the trial court err in ruling there was a full settlement between Wade and Pierce?

II. Did the trial court err in granting summary judgment based on his conclusion the execution of the document constituted "a settlement of a claim" initiated under the Tort Claims Act?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mosteller v. County*

---

**2.** This case was previously before the Court in *Wade v. Berkeley County,* 330 S.C. 311, 498 S.E.2d 684 (Ct.App.1998). In that opinion, this Court concluded Wade was not collaterally estopped by a prior Workers' Compensation finding from litigating the issue of whether the County employee, Bobby Joe Pierce, was acting within the course and scope of his employment when his vehicle collided with Wade's vehicle. We ruled a material issue of fact existed concerning Pierce's scope of employment and reversed the trial court's grant of summary judgment in favor of the County. The case is now before us pursuant to a second motion for summary judgment on a different ground.

*of Lexington,* 336 S.C. 360, 520 S.E.2d 620 (1999); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); Rule 56(c), SCRCP. In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991); *Young, supra.*

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Mosteller, supra.* All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Vermeer, supra.* Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Id.* Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991).

## LAW/ANALYSIS [3]

### I. EFFICACY OF SETTLEMENT DOCUMENTS UNDER SOUTH CAROLINA JURISPRUDENCE

Without a jury verdict, order of judgment, or confession of judgment, cases are disposed of by way of amicable disposition

---

3. We initially note there is a question of fact as to whether Pierce was acting within the course and scope of his employment with Berkeley County at the time of the accident. Wade asserts this factual dispute prevents the grant of summary judgment. If Pierce was not acting in the course and scope of his employment, then the County would have no vicarious liability under the Tort Claims Act. However, assuming Pierce was acting in the course and scope of his employment at the time of the accident, the court would still be required to determine the

under the aegis and ambit of three recognizable legal documents effectuating the *settlement:* (1) general release; (2) covenant not to sue; and (3) covenant not to execute. The bench and bar have great concernment in regard to the avenues of disposition available to party litigants, especially in the proliferating multi-party litigation, such as product liability, professional malpractice, and construction litigation. Attorneys representing litigants subsumed in multi-party litigation ofttimes seek to extricate a party while the remaining parties litigate to an ultimate resolution. A cardinal principle inherent in the settlement process is the utilitarian use of the proper document to achieve the desired result, i.e., the salvation of the party from further liability or exposure. We analyze with certitude the precedent governing the documents to achieve the ultimate goals of the parties.

## A. General Release

The term "release" has been defined as the "relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." 76 C.J.S. *Release* § 2 (1994). A release is an agreement providing that a duty owed to the maker of the release is discharged immediately. *Id. See also Black's Law Dictionary* 1289 (6th ed.1990) (a release is a writing or oral statement manifesting an intention to discharge another from an existing or asserted duty). A release is contractual in nature. 76 C.J.S. *Release* § 2. Whether a particular agreement constitutes a release is to be determined from the intent of the parties. *Id.*

Under the common law, the release of one of multiple joint tortfeasors, regardless of the intention of the parties, released all. *Bartholomew v. McCartha,* 255 S.C. 489, 179 S.E.2d 912 (1971). In *Bartholomew,* the Court rejected this common law rule and held:

Being untrammeled by the ancient rule which, in our view, tends to stifle settlements, defeat the intention of parties and extol technicality, we adopt the view that the release of one tort-feasor does not release others who

legal issue of whether Wade's action against the County was barred based upon § 15–78–70(d). Thus, this factual dispute is not material so as to prevent disposition by summary judgment.

wrongfully contributed to plaintiff's injuries unless this was the intention of the parties, or unless plaintiff has, in fact, received full compensation amounting to a satisfaction.

*Bartholomew,* 255 S.C. at 492, 179 S.E.2d at 914. *See also Scott by McClure v. Fruehauf Corp.,* 302 S.C. 364, 396 S.E.2d 354 (1990) (release of one tortfeasor does not constitute release of others who contributed to plaintiff's injuries unless parties intended such a release or plaintiff received full satisfaction).

### B. Covenant Not to Sue

The covenant not to sue was developed at common law to permit the release of one or more joint tortfeasors without affecting the covenantor's rights against the other joint tortfeasors. A covenant not to sue is a covenant by one who had a right of action at the time of making it against another person, by which he agrees not to sue to enforce such right of action. 76 C.J.S. *Release* § 4 (1994). "Such covenant does not extinguish a cause of action and does not release other joint tortfeasors even if it does not specifically reserve rights against them." *Black's Law Dictionary* 364 (6th ed.1990). However, one tortfeasor is entitled to credit for the amount paid by another tortfeasor for a covenant not to sue. *See Powers v. Temple,* 250 S.C. 149, 156 S.E.2d 759 (1967).

A covenant not to sue is not a release. 76 C.J.S. *Release* § 4. "The difference is one of intent and grows out of the construction placed on the terms of the instrument, since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action; and, although it may operate as a release between the parties to the agreement, it will not release a claim against joint obligors or joint tortfeasors." *Id.* (Footnotes omitted). In the case of a release, there is an immediate discharge; where as, in the case of a covenant not to sue, there is merely an agreement not to prosecute a suit. 66 Am.Jur.2d *Release* § 2 (1973). It is nothing but a contract and should be so construed. *Id.*

In *Ackerman v. Travelers Indemnity Co.,* 318 S.C. 137, 456 S.E.2d 408 (Ct.App.1995), this Court discussed the genesis of the covenant not to sue:

"At common law, a valid release of one joint tort-feasor was usually a release of all the joint wrongdoers and was a bar to a suit against any of them for the same wrong. At the base of this rule was the theory that there could be but one compensation for the joint wrong. If the injured party was paid by one of the wrongdoers for the injury he had suffered, each wrongdoer being responsible for the whole damage, his cause of action was satisfied in exchange for a release, and he could not proceed against the others. Thus a release of one joint wrongdoer released all. But when the consideration received for the release was not full compensation for the injury, the purpose for the harsh rule did not exist. To allow for this, the covenant not to sue was developed."

*Ackerman,* 318 S.C. at 146–47, 456 S.E.2d at 413.

### C. Covenant Not to Execute

A covenant not to execute "is a promise not to enforce a right of action or execute a judgment when one had such a right at the time of entering into the agreement." 76 C.J.S. *Release* § 4 (1994). It is merely a contract and not a release. *Id.* A covenant not to execute is distinguishable from a covenant not to sue in that the former is normally executed when a settlement occurs after the filing of a lawsuit, while the latter is entered into before a lawsuit is filed. *Id.*

South Carolina courts have recognized the distinctions between a release, a covenant not to sue, and a covenant not to execute. In *Poston by Poston v. Barnes,* 294 S.C. 261, 363 S.E.2d 888 (1987), the Supreme Court explained:

Other jurisdictions hold that a Covenant Not To Execute is not a satisfaction or a release and that its legal effect is similar to that of a Covenant Not To Sue because it does not operate to release other joint tortfeasors. A Covenant Not To Execute is a promise not to enforce a right of action or execute a judgment when one had such a right at the time of entering into the agreement. A Covenant Not to Sue and a Covenant Not to Execute are so closely akin that a major distinguishing factor is that the latter is normally executed when a settlement occurs after the filing of a lawsuit, while the former is entered into before a lawsuit is filed. In South Carolina when a Covenant Not To Sue has been

entered into, usually the covenanting tortfeasor is no longer a party to the litigation.

*Poston,* 294 S.C. at 263–64, 363 S.E.2d at 889–90 (citations omitted).

■ The intention of the parties governs in determining whether an instrument is a covenant not to execute or a release. *Ackerman v. Travelers Indemnity Co.,* 318 S.C. 137, 456 S.E.2d 408 (Ct.App.1995). *See also Cobb v. Benjamin,* 325 S.C. 573, 482 S.E.2d 589 (Ct.App.1997) (to determine whether instrument is covenant not to execute or release, this Court looks to intention of parties).

## II. VALIDITY AND IMPACT OF DOCUMENT UTILIZED IN CASE SUB JUDICE

■ In exchange for the payment of $13,000, Wade and Pierce executed a document entitled "Covenant Not To Execute Judgment." The document acknowledged Wade's damages exceeded the amount of liability insurance coverage available to Pierce from his personal insurance carrier. The covenant contained the following language:

3. That Gerald D. Wade, Jr. and Shirley M. Wade do hereby **promise and covenant** for themselves, their heirs, personal representatives, administrators, legal representatives and assigns, **not to execute** against Bobby Joe Pierce or Government Employees Insurance Company, their heirs, personal representatives, administrators, legal representatives, successors or assigns, **on any judgment** that may be attained by Gerald D. Wade, Jr. and Shirley M. Wade on account of any and all claims, demands, damages, costs or expenses, including, but not limited to, any medical or hospital expenses, loss of services, actions and causes of action, arising from any act, omission or occurrence or resulting or to result from the automobile accident which occurred on June 1, 1995, in Berkeley County, South Carolina, when Gerald D. Wade, Jr. was involved in a motor vehicle collision with a vehicle driven by Bobby Joe Pierce.

4. That, furthermore, Gerald D. Wade, Jr. and Shirley M. Wade do further **covenant and promise that if they should attain a judgment against Bobby Joe Pierce or Government Employees Insurance Company, they will**

**not execute on said judgment against Bobby Joe Pierce or Government Employees Insurance Company** and that, upon a final determination of whether any underinsured motorist benefits will be paid, they and their attorney, George J. Kefalos, will cause the judgment to be marked and entered as satisfied.

. . . .

10. That Gerald D. Wade, Jr. and Shirley M. Wade, Bobby Joe Pierce and Government Employees Insurance Company furthermore agree and understand that **this instrument is not intended as a release or discharge, nor as an accord and satisfaction with any person whomsoever, but only as a Covenant Not to Execute** against Bobby Joe Pierce and Government Employees Insurance Company, their heirs, personal representatives, administrators, legal representatives, successors and assigns, and is **executed simply to purchase freedom from the threat of execution upon any judgment that may be attained against Bobby Joe Pierce or Government Employees Insurance Company** including any judgment in the lawsuit filed in the Court of Common Pleas for Berkeley County, South Carolina, and assigned Case No. 95–CP–08–1281. (Emphasis added).

Based upon its language, we conclude the document executed by Wade and Pierce was intended to be a covenant not to execute as opposed to a settlement agreement, release, or covenant not to sue. The document evidences no intent to release others from liability and, in fact, contemplates further litigation against other tortfeasors. The instrument recognizes Wade was not fully compensated for his injuries. It contemplates Wade's pursuit of underinsured motorist coverage. Further, the agreement explicitly states it does not operate as a release or discharge. As such, the document is very similar to the documents found by the Court to be covenants not to execute in the cases of *Ackerman v. Travelers Indemnity Co.*, 318 S.C. 137, 456 S.E.2d 408 (Ct.App.1995), and *Cobb v. Benjamin*, 325 S.C. 573, 482 S.E.2d 589 (Ct.App. 1997).

Wade is still entitled to seek a judgment against Pierce and Government Employees Insurance Company (GEICO). He

merely agreed *not* to legally enforce the judgment. In fact, *the covenant not to execute expressly reserves Wade's right to obtain a judgment against Pierce.*

## III. SOUTH CAROLINA TORT CLAIMS ACT— "SETTLEMENT OF A CLAIM UNDER THIS CHAPTER"

The trial judge concluded Wade's covenant not to execute constituted a "settlement" under S.C.Code Ann. § 15–78–70(d) (Supp.1999). We disagree.

Section 15–78–70(d) of the South Carolina Tort Claims Act provides:

A settlement or judgment in an action or a settlement of a claim under this chapter constitutes a complete bar to any further action by the claimant against an employee or governmental entity by reason of the same occurrence.

The original complaint against Pierce and John Doe was *not* a proceeding under the South Carolina Tort Claims Act. The lawsuit at this stage had not been initiated under the Act. Section 15–78–70(c) (Supp.1999) provides:

[A] person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted.

The gravamen of the entire controversy revolves around the determination of the status of Pierce. The statutory language "for which the employee was acting cannot be determined at the time the action is instituted" identifies the conundrum facing Pierce, GEICO, and Wade.

### A. Statutory Construction

When construing a statute, the primary function of the court is to ascertain the intention of the legislature. *See Lester v. South Carolina Workers' Compensation Comm'n*, 334 S.C. 557, 514 S.E.2d 751 (1999). A statutory provision should be given a reasonable and practical construction consis-

tent with the purpose and policy expressed in the statute. *Davis v. NationsCredit Financial Servs. Corp.*, 326 S.C. 83, 484 S.E.2d 471 (1997). If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.*, 333 S.C. 33, 508 S.E.2d 16 (1998); *City of Columbia v. A.C.L.U. of South Carolina, Inc.*, 323 S.C. 384, 475 S.E.2d 747 (1996). Where the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand its scope. *Durham v. United Companies Financial Corp.*, 331 S.C. 600, 503 S.E.2d 465 (1998). Where a statute is ambiguous, however, the Court must construe the terms of the statute. *Lester, supra.* Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck*, 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998).

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *The Lite House, Inc. v. J.C. Roy, Co.*, 309 S.C. 50, 419 S.E.2d 817 (Ct.App.1992). Where the legislature elects not to define the term in the statute, courts will interpret the term in accord with its usual and customary meaning. *Adoptive Parents v. Biological Parents*, 315 S.C. 535, 446 S.E.2d 404 (1994). In construing a statute, the court looks to its language as a whole in light of its manifest purpose. *Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995).

## B. Covenant Not to Execute Did Not Constitute a "settlement of a claim under this chapter"

The phrase "under this chapter" in § 15–78–70(d) refers to the Tort Claims Act and modifies the prior "settlement" phrases. Thus, a "settlement or judgment in an action" under the Tort Claims Act or the "settlement of a claim" under the Tort Claims Act "constitutes a complete bar to any further action by the claimant against an employee or govern-

mental entity by reason of the same occurrence." However, in the instant case, there is *no* "settlement or judgment in an action or a settlement of a claim" under the Tort Claims Act. The modifier mandates that the settlement or judgment activity be "under this chapter." The document executed by Wade is *not* "under this chapter."

The trial judge concluded the covenant not to execute constituted a "settlement" under § 15–78–70(d) "since an agreement ha[d] been reached between Wade and Pierce which settlement . . . fully resolved the matters between Wade and Pierce." We disagree.

Here, the covenant not to execute did not relate to an action or claim under the Tort Claims Act. The covenant was *not* a "settlement or judgment in an action or a settlement of a claim" under § 15–78–70(d). No claim had been made against the County at the time Pierce's personal liability insurance carrier paid $13,000 in exchange for the covenant not to execute. The initial complaint alleged causes of action against Pierce personally. How can an action against Pierce in his *individual capacity* constitute an action under the Tort Claims Act?

The payment to Wade by Pierce and GEICO was effectuated so as to eliminate personal liability of Pierce in his status as an individual. If Pierce was not acting within the course and scope of his employment, he faced personal liability for damages caused to Wade. The County maintains Pierce was not acting within the course and scope of his employment at the time of the collision in which Wade was injured. Footnote 2 in the dissent avers the allegations in regard to the employment status of Pierce in the complaint must be accepted as true because this is a summary judgment motion. We disagree with this statement. The instant case is in the unusual posture of having been before the Court of Appeals on a prior occasion. In the first appeal, this Court ruled: "The facts of this case create a jury question as to whether Pierce was acting within the course and scope of his employment when he collided with Wade. . . . [B]ecause a *genuine issue of material fact exists regarding whether Pierce was acting within the scope of his employment when the accident occurred,* the law does not support the trial court's grant of summary judgment

to County." *Wade v. Berkeley County*, 330 S.C. 311, 320–21, 498 S.E.2d 684, 689 (Ct.App.1998) (emphasis added).

Pierce desired protection from his vulnerable status if it was decided at a later time that he was *not* within the course and scope of his employment. The document at issue *only* gave Pierce protection as an individual. It never contemplated any impact on the issue of his employment status.

Neither a "governmental entity," as defined in § 15–79–30(d), nor its insurer paid any funds for the covenant. Therefore, this case does not present a question of double recovery against a governmental entity. Further, the covenant not to execute recognized Wade had not been fully compensated for his injuries. The covenant explicitly stated it did not operate as a release or discharge. Simplistically put, there was no "settlement of a claim under this chapter."

The dissent asserts: "The majority's holding allows a plaintiff to sue an employee of a governmental entity first in his or her individual capacity, force the employee into settling the claim based on the employee's potential individual liability, and then subsequently amend the complaint to add the governmental entity as a defendant." Factually, this statement is *not* correct. Here, Wade only added the County *after* Pierce testified in his deposition that he was working on the job. In short, under the facts here, to refuse to let Wade end his lawsuit with GEICO would *force* him to go to trial against both parties—even though GEICO wanted out. As a matter of *judicial policy*, it would wreak havoc to adopt the position of the dissent. We refuse to countenance the use of a judicial straitjacket in this trial scenario.

Additionally, this is *not* an election of remedies issue. Rather, it is an analysis by the Court as to whether the covenant not to execute bars Wade's claim against the County. Wade did not elect a remedy. In this factual scenario, Wade contractually agreed with Pierce (private individual) and Government Employees Insurance Company (Pierce's private insurance company) *inter sese* not to execute on any judgment that may be obtained against Pierce as an individual.

Finally, in contrariety to the dissent's assertion, we do *not hold or suggest* Pierce and the County are joint tortfeasors. Nothing in this opinion is bottomed and premised upon the

notion that Pierce and the County are joint tortfeasors. There is no *assumption* that Pierce and Berkeley County are joint tortfeasors.

For the sake of clarity, we limit the efficacy of this opinion to the unique facts of this case.

## CONCLUSION

We hold § 15–78–70(d) does not bar Wade's action against the County under the Tort Claims Act. First, the covenant not to execute does *not* constitute a "settlement of a claim *under this chapter.*" (Emphasis added). Second, Wade's claim against Pierce was not under the Tort Claims Act. It was an action against Pierce as an individual facing personal liability in an alleged non-governmental employment status. Accordingly, the Circuit Court's order granting summary judgment to the County is

**REVERSED and REMANDED.**

CONNOR, HUFF, and HOWARD, JJ., concur.

HEARN, J., concurs in a separate opinion, joined by CURETON and STILWELL, JJ.

GOOLSBY, J., dissents in a separate opinion.

HOWELL, C.J., concurs in the opinion of Judge GOOLSBY.

HEARN, Judge (concurring):

This case has a protracted procedural history, having already been before this Court twice, and now a third time in this *en banc* rehearing. While I agree with the result reached by the majority, I feel compelled to express my concern that this decision be limited to its unique facts, and further, to accept the dissent's invitation to point specifically to those facts. Therefore, I separately concur.

In this case, the County placed both Wade and Pierce in the ultimate "catch–22." Wade initially proceeded against Pierce individually without knowledge that he was possibly acting within the scope of his official duties at the time of the accident. By the time Wade discovered that Pierce might

have been acting in the scope of his employment with the County, the County had already asserted the opposite position in a workers' compensation claim filed by Pierce. Because the County denied Pierce was acting in the course and scope of his employment, Pierce realized that he faced substantial individual liability in Wade's civil suit. It was incumbent upon him, as well as his liability insurer, to attempt to reach an amicable disposition. Moreover, it is the policy of the courts of this state to foster settlements. Subsequent to execution of the covenant, the County altered its position, claiming that if Pierce *was* acting within the scope of official duties, it was entitled to the protection of the Tort Claims Act, specifically, the bar of further claims against a governmental entity after a settlement or judgment under the Act.

The dissent would place Pierce in the unenviable position of having to gamble on liability exposure. If the jury found he was not acting in his official duties at the time of the accident and awarded substantial damages to Wade, Pierce and his insurance carrier would be exposed to a judgment which they otherwise could have avoided by a reasonable settlement. Pierce and his insurance carrier are placed in a worse position than an ordinary tortfeasor simply by virtue of Pierce's employment with the County. Moreover, there is absolutely no suggestion that Wade was attempting a double recovery in this case. At oral argument, Wade's counsel conceded that any recovery against the County would be offset by his settlement with Pierce. Cast against these peculiar facts, the majority correctly holds that Wade's actions did not constitute a settlement "under the Act."

The County's ultimate liability in this case is still very much in question. A jury will have to determine the issue of Pierce's status at the time of the accident. I do not believe, however, that Wade should be denied the right to proceed against the County because of his prior covenant not to execute against Pierce. I agree with the majority that the covenant did not constitute a settlement under the Act since at that time whether Pierce was acting within the scope of his official duties was in serious dispute because of the position taken by the County.

CURETON and STILWELL, JJ., concur.

GOOLSBY, Judge (dissenting):

I respectfully dissent.

The South Carolina Tort Claims Act is the exclusive civil remedy available in actions against governmental entities. *Murphy v. Richland Memorial Hosp.*, 317 S.C. 560, 455 S.E.2d 688 (1995). The Act and its provisions relating to limitations and exemptions must be construed liberally in favor of limiting the liability of a governmental entity. S.C.Code Ann. § 15–78–200 (Supp.1998). Thus, if the Act is capable of two interpretations, one favoring limiting liability and one favoring expanding liability, we must choose that interpretation that limits the liability of the government.

Under the Tort Claims Act, an employee of a governmental entity, except for limited, well-defined exceptions, enjoys immunity for torts committed by him or her while acting within the scope of his or her official duties. S.C.Code Ann. § 15–78–70(a) and (b) (Supp.1998). Further, "[a] settlement ... in an action or a settlement of a claim under this chapter [the Tort Claims Act] constitutes a complete bar to any further action by the claimant against an employee or governmental entity by reason of the same occurrence." S.C.Code Ann. § 15–78–70(d) (Supp.1998). The question before us then is whether a settlement obtained by a plaintiff with an employee of a governmental entity, irrespective of how the settlement documents are styled,[1] precludes the plaintiff from later bring-

---

1. A settlement concluded by a covenant not to execute is still a settlement, notwithstanding it may not be a release or covenant not to sue. *See State ex rel. Missouri Cable Telecomm. Ass'n v. Missouri Pub. Serv. Comm'n*, 929 S.W.2d 768, 773 (Mo.Ct.App.1996) ("By its very nature, a settlement agreement is a compromise by each party to the agreement of certain rights in order to gain what it did not have an established right to claim."); BLACK'S LAW DICTIONARY *Settlement*, at 1538–39 (1968) (defining settlement, *inter alia*, as "[a]n adjustment between persons concerning their dealings or difficulties; an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other"). Certainly, our supreme court has seen it that way. *See Poston by Poston v. Barnes*, 294 S.C. 261, 264, 363 S.E.2d 888, 889 (1987) ("A Covenant Not to Sue and a Covenant Not to Execute are so closely akin that a major distinguishing factor is that the latter is normally executed when a *settlement occurs* after the filing of a lawsuit, while the former is entered into before a lawsuit is filed.") (emphasis mine). Indeed, both Gerald D. Wade, the claimant, and Bobby Joe Pierce, the employee of the governmental entity, gave up

ing an action against the governmental entity where the complaint alleges the employee was acting within the scope of his or her official duties at the time the claim occurred.[2] The majority concludes it does not.

Because we must interpret the statute in favor of limiting liability, I would hold that where a plaintiff has pursued a claim against an employee of a governmental entity in the employee's individual capacity arising from a particular occurrence, a settlement of that claim bars a later action against the governmental entity based upon a claim arising from the same occurrence where, as here, the complaint in the later action alleges the employee acted within the scope of his or her official duties at the time of the occurrence.

The fact that at the time of the settlement between the plaintiff and the employee neither a claim had been made nor an action brought against the governmental entity does not make the settlement of the claim any less a settlement of a claim "under this chapter" where, as happened here, "the same occurrence" provides the basis for both the action against the employee and the action against the governmental entity. The point at which a claimant makes an allegation that an employee of a governmental entity acted within the scope of his or her official duties should make no difference as far as the limitation contained within Section 15–78–70(d) is concerned, particularly where, as in this case, the record does not show that either the claimant or the employee moved prior to settlement to join the governmental entity as a party defendant based on principles of *respondeat superior*.

In the present case, the only way the plaintiff Wade can recover from Berkeley County is if it is determined Pierce was acting within the scope of his official duties at the time of the occurrence. Should a jury determine that Pierce was acting within the scope of his official duties, Wade will have already settled with Pierce a claim based on the exact same occur-

---

something and received something as a result of their agreement. Wade got $13,000, and Pierce got a covenant not to execute.

**2.** In reviewing the trial court's grant of summary judgment, we must view the facts in the light most favorable to Wade. Viewing the evidence that way, and for purposes of this appeal, Pierce was, therefore, an employee of Berkeley County.

rence, and Wade's claim against Berkeley County would therefore be barred.

The majority's holding allows a plaintiff to sue an employee of a governmental entity first in his or her individual capacity, force the employee into settling the claim based on the employee's potential individual liability, and then subsequently amend the complaint to add the governmental entity as a defendant. Moreover, the holding allows a plaintiff not only to assert two inconsistent theories of recovery (*i.e.*, the employee was or the employee was not acting within the scope of his or her official duties), but allows the plaintiff to recover under both. If the Tort Claims Act does allow the procedure employed by the plaintiff here, then the Act is in serious need of amendment, for no plaintiff will hereafter pursue a claim under the Act in any other fashion—particularly where the claim involves a motor vehicle collision between a plaintiff and a governmental employee.

Regarding any suggestion that this case will be limited to its particular facts, those facts that will trigger a future application of the rule announced by this case ought, in fairness, to be spelled out by someone in the majority, together with the rule itself. As I see the matter, the rule announced by this court in this case is as follows: any claimant may bring suit solely against an employee of a governmental entity who commits a tort while acting within the scope of his or her official duty, notwithstanding the tort does not involve actual fraud, actual malice, intent to harm, or a crime involving moral turpitude, and a settlement of the action or claim will not constitute a complete bar to any subsequent action by the claimant against the governmental entity by reason of the same occurrence provided the claimant did not allege in the earlier action that the employee acted within the scope of his or her official duty. *Cf.* S.C.Code Ann. § 15–78–70(a), (b) (Supp.1998) (subsections under the South Carolina Tort Claims Act that limit employee liability); *id.* § 15–78–70(d) (subsection that bars further action against an employee or governmental entity in the event of a settlement of a claim or action under the act).

One other thing: notwithstanding the majority's disclaimer toward the end of its opinion, and considering its discussion concerning joint tortfeasors and the result it reaches (allowing

a claim against the master after the servant has settled a claim based on the same occurrence), the majority still treats Pierce and Berkeley County as joint tortfeasors. Clearly, at least at common law, they are not so. *See Seaboard Air Line Ry. Co. v. Coastal Distrib. Co.*, 273 F.Supp. 340, 342 (D.S.C. 1967) ("Contrary to the argument of the railroad, [the master and servant], though suable jointly (*Cravens v. Lawrence*, 1936, 181 S.C. 165, 169, 186 S.E. 269; *Parker v. Bissonette*, 1943, 203 S.C. 155, 163, 26 S.E.2d 497, 147 A.L.R. 773; *Davenport v. Southern Ry. Co.*, 4 Cir., 1905, 135 F. 960, 962–963;) are not strictly joint-tortfeasors."); *Alvarez v. New Haven Register, Inc.*, 249 Conn. 709, 720, 735 A.2d 306 (1999) ("[A] principal whose liability rests solely upon the doctrine of respondeat superior and not upon any independent act of the principal is not a joint tortfeasor with the agent from whose conduct the principal's liability is derived."); *cf.* HUBBARD and FELIX, THE SOUTH CAROLINA LAW OF TORTS, at 630 (2d ed. 1997) ("[A] covenant not to sue the employee would also release the employer who was liable solely because of the doctrine of *respondeat superior.*").

I would affirm.

HOWELL, C.J., concurs.